## Lilyan Donner et al. *v.* Kelvan Kearse et al.
### (15036)

Peters, C. J., and Callahan, Berdon, Norcott and Palmer, Js.

Argued March 22—decision released August 1, 1995

*Wesley W. Horton*, with whom were *Susan M. Cormier* and *Jack G. Steigelfest*, for the appellants (named defendant et al.).

*Michael A. Stratton*, with whom, on the brief, was *Richard A. Bieder*, for the appellee (named plaintiff).

BERDON, J. This appeal raises two principal issues: (1) whether General Statutes § 52-572h[1] requires a jury

---

[1] General Statutes § 52-572h provides in pertinent part: "(c) In a negligence action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be lia-

to consider the negligence of a plaintiff who had withdrawn his action in apportioning the amount of damages for which the defendant is responsible; and (2) whether the trial court properly ordered a separate trial on the issue of whether the plaintiff, in executing a general release of liability, had released the defendant.

The original plaintiffs, Lilyan Donner and Robert Donner, brought this action for damages as a result

ble to the claimant only for his proportionate share of the recoverable economic damages and the recoverable noneconomic damages except as provided in subsection (g) of this section.

"(d) The proportionate share of damages for which each party is liable is calculated by multiplying the recoverable economic damages and the recoverable noneconomic damages by a fraction in which the numerator is the party's percentage of negligence, which percentage shall be determined pursuant to subsection (f) of this section, and the denominator is the total of the percentages of negligence, which percentages shall be determined pursuant to subsection (f) of this section, to be attributable to all parties whose negligent actions were a proximate cause of the injury, death or damage to property including settled or released persons under subsection (n) of this section. Any percentage of negligence attributable to the claimant shall not be included in the denominator of the fraction.

"(e) In any action to which this section is applicable, the instructions to the jury given by the court shall include an explanation of the effect on awards and liabilities of the percentage of negligence found by the jury to be attributable to each party.

"(f) The jury or, if there is no jury, the court shall specify: (1) The amount of economic damages; (2) the amount of noneconomic damages; (3) any findings of fact necessary for the court to specify recoverable economic damages and recoverable noneconomic damages; (4) the percentage of negligence that proximately caused the injury, death or damage to property in relation to one hundred per cent, that is attributable to each party whose negligent actions were a proximate cause of the injury, death or damage to property including settled or released persons under subsection (n) of this section; and (5) the percentage of such negligence attributable to the claimant. . . .

"(n) A release, settlement or similar agreement entered into by a claimant and a person discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the total award of damages is reduced by the amount of the released person's percentage of negligence determined in accordance with subsection (f) of this section."

of personal injuries they received in an automobile collision in the town of Windsor. Robert Donner had been operating the vehicle in which he and Lilyan Donner, his passenger, were riding. In their action, the Donners alleged that two other drivers had been operating their vehicles negligently and had caused both the collision and the Donners' injuries. These other drivers were Kelvan Kearse, a Windsor police officer who was operating a town police cruiser, and Anna Riccio. Both Kearse and Riccio were named as defendants in the action.[2]

Prior to trial, two events occurred that altered the status of the parties to the action. First, Lilyan Donner agreed to a $100,000 settlement with Riccio, and executed a release that specifically released Riccio from any claims arising from the auto accident. This preprinted general release also included boilerplate language stating that Lilyan Donner similarly released from liability "any and all other persons" involved in the collision. Lilyan Donner withdrew her action against Riccio and the Donners subsequently amended their complaint to reflect this change. Second, Robert Donner withdrew his cause of action against both defendants. This meant that the sole remaining plaintiff was Lilyan Donner (plaintiff) and that the sole remaining defendant was Kearse (defendant). The plaintiff amended her complaint to reflect the new status of the pleadings and the parties.

The defendant filed an answer and several special defenses to the revised complaint. The defendant spe-

[2] Also named as defendants were the town of Windsor and John J. Riccio, Jr. The Donners alleged that the town was vicariously liable for the collision because the defendant Kearse was acting within the scope of his employment at the time of the collision. The Donners alleged that John Riccio was vicariously liable on the basis of the family car doctrine, because he owned the vehicle that was driven by Anna Riccio. Because vicarious liability is not an issue in this appeal, we refer only to the defendants Kearse and Anna Riccio.

cially pleaded that the proximate cause of the plaintiff's injuries was the negligence of Robert Donner, rather than any negligence of himself. The defendant also specially pleaded that the plaintiff had released him from liability when she executed the release that included language releasing "any and all other persons" from liability. The plaintiff moved to strike the special defense that referred to Robert Donner's negligence on the ground that he was no longer a party and, therefore, that his negligence could not be considered by the jury in apportioning damages under § 52-572h. The plaintiff also moved to bifurcate the issue of whether the release also had operated to release the defendant from liability. The trial court, over the objections of the defendant, granted both motions. The trial court subsequently charged the jury on how to determine damages if it found that the defendant had been negligent.[3] The trial court instructed the jury that in apportioning the amount of damages for which the defendant was responsible, it should take into account any negligence that was attributable to Riccio. The trial court did not, however, give a similar instruction with respect to any negligence of Robert Donner.

The jury found the issue of liability in favor of the plaintiff and found that the plaintiff had incurred economic and noneconomic damages in the amount of $554,000. The jury attributed 100 percent of the negligence to the defendant and 0 percent of the negligence to Riccio. Accordingly, the jury apportioned the entire amount of the $554,000 in damages to the defendant. The court accepted the verdict.

In accordance with the plaintiff's earlier motion for bifurcation, the same jury next considered whether the plaintiff had released the defendant from liability when

---

[3] By using the terms "negligent" and "negligence" in this opinion, we refer to any negligence that was a proximate cause of the plaintiff's injuries.

she had executed the release. After a trial on the issue, the jury, in response to a special interrogatory, found that the plaintiff had not intended to release the defendant from liability. The trial court subsequently rendered judgment for the plaintiff on the verdict.[4] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

The defendant raises four issues on appeal: (1) Did the trial court properly strike the defendant's special defense that the negligence of Robert Donner was a proximate cause of the plaintiff's injuries? (2) Did the trial court properly bifurcate the issue of whether the plaintiff, in executing the release, had also released the defendant from liability? (3) Did the trial court properly instruct the jury on statutory negligence? and (4) Was the jury's finding that Riccio was 0 percent negligent contrary to the evidence presented? We affirm the judgment of the trial court.

I

The defendant initially argues that the trial court should not have stricken his special defense that referred to the negligence of Robert Donner as being a proximate cause of the plaintiff's injuries. The defendant argues that the court's action was improper because § 52-572h required the jury, in apportioning responsibility and the amount of damages for which the defendant was responsible, to consider not only the negligence of Riccio but also the negligence of Robert Donner. The defendant's objective in seeking to include Robert Don-

---

[4] The defendant filed a motion to set aside the verdicts that raised the same issues he has pursued in this appeal. See General Statutes § 52-228b; *Pietrorazio* v. *Santopietro*, 185 Conn. 510, 515, 441 A.2d 163 (1981) ("a motion to set aside a verdict is essential for a full review of claims of error in civil jury cases seeking money damages"). The trial court denied the motion.

ner's negligence within the jury calculus, of course, is to reduce the percentage of responsibility that the defendant must bear for causing the plaintiff's injuries.[5]

Before embarking on our analysis of the defendant's claim, it is helpful to begin with a brief history of the development of the apportionment of damages among tortfeasors. Prior to October 1, 1986, this state adhered to the rules of joint and several liability with no contribution among joint tortfeasors. This doctrine can be stated succinctly. "If the illegal conduct of each of the defendants was a proximate cause of the collision, they would be liable jointly and severally, the plaintiff would have a right to recover the entire amount of damages awarded from either, and, if he did so, the defendant paying them would have no right of contribution against the other; or the plaintiff might have sued either alone, and of course in the event of a recovery, that one would have been compelled to pay the entire amount of damages." *Rose* v. *Heisler,* 118 Conn. 632, 633, 174 A. 66 (1934).[6]

---

[5] Section 52-572h (d) establishes a formula to ascertain the proportionate share of damages for which each party is liable. Briefly, this formula requires the determination of a party's ratio of negligence. The numerator of this ratio consists of that party's percentage of negligence as determined under subsection (f) of the statute. The denominator consists of the total percentages of negligence for all individuals to whom the statute looks within a given case, also as determined within subsection (f), but not including any percentage of negligence attributable to the claimant. In order to determine that party's share of damages, this ratio is then multiplied by the recoverable economic and noneconomic damages, which are defined as the total economic and noneconomic damages less certain credits, including those amounts attributable to the claimant's own negligence. General Statutes § 52-572h (a).

[6] "Our rule has certain exceptions, notably in the indemnity situation where the liability of a defendant is vicarious or based merely on a relationship, such as that of employer-employee. *Kaplan* v. *Merberg Wrecking Corporation,* 152 Conn. 405, 412, 207 A.2d 732 (1965); *Preferred Accident Ins. Co.* v. *Musante, Berman & Steinberg Co.,* 133 Conn. 536, 542, 52 A.2d 862 (1947); *Bailey* v. *Bussing,* 28 Conn. 455 (1859)." *Gomeau* v. *Forrest,* 176 Conn. 523, 525, 409 A.2d 1006 (1979).

In accordance with the common law of joint and several liability, therefore, even a defendant whose degree of fault was comparatively small could be held responsible for the entire amount of damages, as long as his negligence was a proximate cause of the plaintiff's injuries. Thus, the plaintiff could collect the entire amount of his judgment "from the richest defendant, or from the defendant with the 'deepest pocket.' " G. Royster, "Joint and Several Liability and Collateral Sources Under the 1987 Tort Reform Act," 62 Conn. B.J. 257 (1988).

Partially in response to these concerns, the legislature undertook to reform the tort recovery provisions of our civil system, by enacting No. 86-338 of the 1986 Public Acts (Tort Reform I), which took effect October 1, 1986. Section 3 of Tort Reform I provided that each defendant would initially be liable for only that percentage of his negligence that "proximately caused the injury, in relation to one hundred percent, that is attributable to each *person* whose negligent actions were a proximate cause of the damages." (Emphasis added.) In other words, under Tort Reform I, the jury, in determining the percentage of negligence attributable to any defendant, could take into account the negligence of any other person, whether or not that person was a party to the action. See G. Royster, supra, 62 Conn. B.J. 259 ("Tort Reform I had the plaintiff's negligence compared with everyone in the world who was at fault"). Tort Reform I, however, did not provide the plaintiff with a means of securing payment of damages unless that person was also a *party*.[7]

---

[7] Section 3 (g) of Tort Reform I provided: "Upon motion by the claimant made not later than one year after judgment becomes final through lapse of time or through exhaustion of appeal, whichever occurs later, and after good faith efforts to collect from a liable party, the court shall determine whether all or part of a party's proportionate share of the awarded economic damages and noneconomic damages is uncollectible from that party, and shall reallocate such uncollectible amount among the other parties

Under Tort Reform I, to avoid the possibility that a jury would find that the negligence of a nonparty was a proximate cause of his or her injuries, a plaintiff was required to name as defendants all persons whose actions suggested even the slightest hint of negligence. The unwanted practical effect, therefore, was that plaintiffs were "required to pursue claims of weak liability against third parties, thereby fostering marginal and costly litigation in our courts." *General Accident Ins. Co.* v. *Wheeler,* 221 Conn. 206, 213, 603 A.2d 385 (1992).

The legislature amended these tort recovery provisions just one year later when it enacted No. 87-227 of the 1987 Public Acts (Tort Reform II), the pertinent provisions of which now are codified in part under § 52-572h.[8] These revisions, which took effect October 1, 1987, altered the class of individuals to whom the jury could look in determining whose negligence had been a proximate cause of a plaintiff's injuries. In short, these revisions changed the focus of this class of negligent individuals from any "person" to any "party" and certain other identifiable persons. See General Statutes § 52-572h (c), (d), (f), (n). Thus, while Tort Reform I provided that the jury, in determining the percentage of responsibility of a particular defendant, could also consider the entire universe of negligent persons, Tort Reform II limited this universe to only those indi-

according to their respective percentages of negligence, provided that the court shall reallocate to any defendant an amount equal to that defendant's percentage of negligence multiplied by such uncollectible amount as determined in accordance with subsection (d) of this section. The party whose liability is reallocated is nonetheless subject to contribution and to any continuing liability to the claimant on the judgment. In the event any such liability is reallocated to a defendant obligated to make periodic payment in accordance with the terms of any agreement or judgment entered pursuant to the provisions of section 4 of this act, the payment of the amount so reallocated shall be determined in accordance with section 2 of this act."

[8] See footnote 1.

viduals who were parties to the legal action or who were specifically identified in § 52-572h (n).

Defendants who had been sued, however, were not left without a method to change the universe of negligence to be considered. The legislature included in Tort Reform II a provision that allowed defendants to implead persons who might have been negligent, but who had not been pursued by the plaintiff. General Statutes § 52-102[9] now makes it mandatory for a trial court to grant a party's motion to add a person as a party "if that person is necessary for a complete determination or settlement of any question involved therein . . . ." This provision allowed those individuals named as defendants by the plaintiff to avoid having to pay damages for which they were not responsible. See *Bradford* v. *Herzig*, 33 Conn. App. 714, 724, 638 A.2d 608, cert. denied, 229 Conn. 920, 642 A.2d 1212 (1994) ("[i]f the defendant believed that a nonparty was responsible for some or all of the plaintiff's injuries, it was his responsibility to implead that nonparty").[10]

This legislative history and the history of the development of § 52-572h is especially informative for purposes of this case. It demonstrates that the legislature, in enacting Tort Reform II, intended to limit the universe of negligence to be considered to only particular, identifiable persons. If a defendant wished to broaden the universe of negligence to be considered in any given

---

[9] General Statutes § 52-102 provides: "Upon motion made by any party or nonparty to a civil action, the person named in the party's motion or the nonparty so moving, as the case may be, (1) may be made a party by the court if that person has or claims an interest in the controversy, or any part thereof, adverse to the plaintiff, or (2) shall be made a party by the court if that person is necessary for a complete determination or settlement of any question involved therein; provided no person who is immune from liability shall be made a defendant in the controversy."

[10] The legislature recently changed the means by which a defendant may expand the universe of negligence to be considered in apportioning liability. See Public Acts 1995, No. 95-111, which took effect July 1, 1995.

case, the legislature placed the burden upon him to implead that nonparty in accordance with § 52-102.

Against this legislative landscape, we now consider whether the negligence of the former plaintiff, Robert Donner, should have been included within the universe of negligence under § 52-572h. "Because statutory interpretation is a question of law, our review is de novo." *Andover Ltd. Partnership I* v. *Board of Tax Review*, 232 Conn. 392, 396, 655 A.2d 759 (1995). "In interpreting a statute the court must ascertain and give effect to the intent of the legislature. . . . [T]he meaning of [a] statute must, in the first instance, be sought in the language in which the act is framed. . . . If the language of the statute is clear, it is assumed that the words themselves express the intent of the legislature . . . . Where the statute presents no ambiguity, we need look no further than the words themselves which we assume express the intention of the legislature. . . . When we are confronted, however, with ambiguity in a statute, we seek to ascertain the actual intent by looking to the words of the statute itself . . . the legislative history and circumstances surrounding the enactment of the statute . . . and the purpose the statute is to serve." (Citations omitted; internal quotation marks omitted.) *White* v. *Burns*, 213 Conn. 307, 311, 567 A.2d 1195 (1990). Accordingly, we must begin by considering whether the plain language of the statute required the jury, in apportioning responsibility and damages, to consider any negligence of Robert Donner.

The pertinent provisions of § 52-572h provide as follows: "(d) The proportionate share of damages for which each *party* is liable is calculated by multiplying the recoverable . . . damages by a fraction in which the numerator is the party's percentage of negligence, which percentage shall be determined pursuant to subsection (f) of this section, and the denominator is the total of the percentages of negligence, which percent-

ages shall be determined pursuant to subsection (f) of this section, to be attributable to all *parties* whose negligent actions were a proximate cause of the injury . . . including *settled or released* persons under subsection (n) of this section. Any percentage of negligence attributable to the claimant shall not be included in the denominator of the fraction. . . .

"(f) The jury or, if there is no jury, the court shall specify: (1) The amount of economic damages; (2) the amount of noneconomic damages; (3) any findings of fact necessary for the court to specify recoverable economic damages and recoverable noneconomic damages; (4) the percentage of negligence that proximately caused the injury, death or damage to property in relation to one hundred per cent, that is *attributable to each party* whose negligent actions were a proximate cause of the injury, death or damage to property *including settled or released persons under subsection (n)* of this section; and (5) the percentage of such negligence attributable to the claimant. . . .

"(n) . . . . [T]he total award of damages is reduced by the amount of the *released person's* percentage of negligence determined in accordance with subsection (f) of this section." (Emphasis added.)

Thus, these provisions set forth two classes of persons whose negligence must be considered by the trier of fact: (1) the "parties" to the action; and (2) "settled or released persons," as that term is illuminated in subsection (n). At the time this case went to trial, Robert Donner was not a "party." The term "party" refers "to those by or against whom a legal suit is brought . . . the party plaintiff or defendant, whether composed of one or more individuals and whether natural or legal persons." (Citations omitted; internal quotation marks omitted.) *Lieberman* v. *Reliable Refuse Co.,* 212 Conn. 661, 669, 563 A.2d 1013 (1989); see *Brad-*

*ford* v. *Herzig,* supra, 33 Conn. App. 723 ("[i]t is clear from the language of the statute that the jury is entitled to attribute and divide the percentage of negligence only among parties to the action"). Robert Donner had withdrawn his legal action against the defendant before the time of trial, and he no longer fit this definition of "party." Indeed, the defendant does not seriously argue that, at the time of trial, Robert Donner was a "party" within the meaning of the statute.

Rather, the defendant focuses on the second class of persons whose negligence must be considered by the jury—"settled or released persons under subsection (n) of this section." Subsection (n) further defines the negligence of a settled or released person as "the released person's percentage of negligence." Under the plain language of subsections (f) and (n), therefore, in order for the negligence of Robert Donner to be included in the calculus of apportioning responsibility, he must have been a "released person." A released person under subsection (n) must be a person, not necessarily a party, who *received* a release of liability. The defendant in this case makes no claim, nor is there any evidence on the record that would support a claim, that Robert Donner received a release of liability from the defendant or from anyone else involved in the automobile collision.[11]

In this case, the plaintiff chose to sue only the defendant and Riccio. She did not bring an action against her coplaintiff, Robert Donner. Thus, in accordance with the discretion furnished to her by Tort Reform II, the plaintiff initially defined the universe of negligent persons as the defendant and Riccio,[12] and those two indi-

[11] The defendant does not argue that the release executed by the plaintiff operated to release Robert Donner from liability.

[12] Although at the time of trial Riccio was no longer a party, she was a "released" person under § 52-572h (n), and her negligence was therefore required to be considered in apportioning damages. See General Statutes § 52-572h (f).

viduals were the only ones whose negligence the jury could consider in apportioning responsibility. See General Statutes § 52-572h (f). If the plaintiff had furnished a release of liability arising from the claim to any individual, the universe of negligent persons automatically would have been expanded to include the negligence of that individual. See General Statutes § 52-572h (f). Finally, this universe of negligent persons could also have been expanded, at the option of the defendant, by impleading Robert Donner as a third party defendant. See General Statutes § 52-102; *Bradford* v. *Herzig*, supra, 33 Conn. App. 724. The defendant, for reasons known only to him, chose not to do so.

Accordingly, the jury could not, pursuant to the statutory scheme, consider the negligence of Robert Donner in determining the defendant's percentage of responsibility. The trial court, therefore, acted properly in striking the defendant's special defense that referred to the negligence of Robert Donner.

## II

The defendant next claims that the trial court should not have bifurcated the issue of whether the release furnished to Riccio also released the defendant from liability. The defendant claims that this issue of fact should have been submitted to the jury at the same time as the other issues of fact relating to liability and damages. We disagree.

The source of conflict on this issue is a statutory scheme that, on one hand, requires a jury to determine the effect of a release agreement and, on the other hand, prohibits the jury from learning that a release was executed. General Statutes § 52-572e (b) provides in part that "[a] release by the injured person . . . of one joint tortfeasor does not discharge the other tortfeasors unless, and only to the extent, the release so provides." We have held that the identity of the per-

sons actually released from liability depends upon the intent of the parties to the release agreement. "Under § 52-572e, therefore, the contracting parties' intent, not the operation of a legal rule, determines the scope of a release. . . . [T]his approach provides for consideration of extrinsic evidence of the parties' actual intent and does not confine interpretation of the release to its four corners." *Sims* v. *Honda Motor Co.*, 225 Conn. 401, 413, 623 A.2d 995 (1993).[13] The scope of a release agreement and whether it operated to release a certain person from liability, therefore, are questions to be resolved by the trier of fact. Nevertheless, General Statutes § 52-216a provides that the terms of a release "shall not be read to a jury or in any other way introduced in evidence by either party at any time during the trial of the cause of action against any other joint tortfeasors . . . ."

The defendant makes a two part argument in support of his claim that these statutes, taken together, require a jury to consider the effect of a release agreement along with other factual issues regarding liability and damages. First, the defendant argues that § 52-216a cannot be read as barring, under any and all circumstances, the introduction of a release before the jury. In cases where factual issues relate to the release itself, the defendant argues, the jury must be allowed to consider the release as evidence. To prohibit the jury from doing so, he argues, would infringe a party's state constitutional right to a trial by jury.[14] Second, the defendant argues that § 52-216a does not prevent a jury

---

[13] "The consideration of extrinsic evidence of the parties' intent regarding the scope of the release, whether ambiguous or not, is appropriate because such consideration will best further the purpose of § 52-572e, which in our view is to permit the release of one joint tortfeasor to effect the release of other joint tortfeasors only if the settling parties so intended." *Sims* v. *Honda Motor Co.*, supra, 225 Conn. 413–14.

[14] Article first, § 19, of the Connecticut constitution provides: "The right of trial by jury shall remain inviolate."

from learning during the trial on liability and damages that a release had been executed. As support for this latter argument, the defendant contends that because § 52-216a relates primarily to additur and remittitur procedures, the language that prohibits a jury from learning about a release agreement applies only in these contexts.[15] According to the defendant, therefore, § 52-216a does not prevent a jury from determining the scope of a release at the same time that it makes its other factual findings. Although we agree with the defendant's first point, we do not agree with his second point or with his conclusion.

It is true, as the defendant initially argues, that one cannot read literally the first sentence of § 52-216a to prohibit the introduction into evidence of a release or other agreement not to bring a civil action. Such an outright ban, in cases in which there is an issue of fact regarding the release that must be decided by the jury, would render the statute violative of article first, § 19, of the Connecticut constitution, which provides that the "right of trial by jury shall remain inviolate." A statute that prohibited a jury from making factual determinations under all circumstances would run afoul of this constitutional guarantee. See *Seals* v. *Hickey*, 186 Conn. 337, 350, 441 A.2d 604 (1982) (holding unconstitutional the predecessor to § 52-216a, which gave trial court discretion to *deduct* from award of jury amount of consideration paid by releasor for release). "[W]here a statute reasonably admits of two constructions, one valid and the other invalid on the ground of unconstitutionality, courts should adopt the construction which will uphold the statute . . . ." (Internal quotation marks omitted.) *Bottone* v. *Westport*, 209

---

[15] In his brief, for example, the defendant argues that "the point of [§ 52-216a] . . . is to regulate the use of releases and settlements in adjusting the amount of the verdict" and that "[t]he statute concerns only excessive and inadequate verdicts."

Conn. 652, 672–73, 553 A.2d 576 (1989). Accordingly, we conclude that § 52-216a does not erect a total bar that prevents a jury from ever considering the terms of a release agreement as evidence.

We do not agree with the defendant, however, that we must interpret this statutory prohibition as having effect only in cases in which remittiturs and additurs are involved. Indeed, the plain language of the statute contains no such indication. The language provides that the terms of a release agreement "shall not be read to a jury or in any other way introduced in evidence by either party at any time during the trial of the cause of action against any other joint tortfeasors . . . ." This language says nothing about limiting the effects of this provision strictly to those situations where, at some point later, the trial court decided that a remittitur or additur was proper. Indeed, such an interpretation would render the statutory language meaningless, because a trial court does not decide whether to order an additur or remittitur until after the jury has rendered its verdict. By then, of course, the issue of whether to allow the jury to learn of the release would already have been litigated by the parties. Moreover, the legislative intent supports the opposite view. We have held that " 'the evil intended to be avoided by its passage was the jury's knowledge of the existence of any release or claim or agreement not to sue because such knowledge might tend to be prejudicial to a party to the action.' " *Peck* v. *Jacquemin*, 196 Conn. 53, 68, 491 A.2d 1043 (1985) (interpreting language of current statute); *Seals* v. *Hickey*, supra, 186 Conn. 344 (interpreting language of predecessor statute with virtually identical language). Accordingly, we give effect to the language and intent of § 52-216a.

Applying this provision to the facts of this case, we are persuaded that the jury should not have been informed of the release prior to deciding the issues of

liability and damages with respect to this defendant.[16] The plaintiff released Riccio from liability in exchange for consideration of $100,000. If the jury had been asked to determine the scope of this release during the trial on liability, it would probably have learned about the amount of consideration paid. It would be difficult for the plaintiff to provide the jury with an adequate explanation about why she had accepted this amount, or whether that amount had constituted a compromise or an amount less than the appropriate amount of damages. Indeed, such testimony might well have been irrelevant and inadmissible. Under such circumstances, providing the jury with this information during the trial on liability and damages would inevitably have been prejudicial to the plaintiff's case. Accordingly, the trial court acted properly in ordering the same jury to consider,[17] after returning a verdict on liability and damages, whether the plaintiff had intended to release the defendant when she executed the release.

## III

Next, the defendant claims that the trial court, in instructing the jury on the issue of statutory negligence, improperly used an example that unfairly prejudiced him in the eyes of the jury. Again, we disagree.

The facts related to this claim are as follows. The trial court began its instructions on statutory negligence by explaining that if a person has failed to obey a statute

---

[16] The defendant did not argue in the trial court, nor does he argue on appeal, that the trial court should have empaneled a separate jury to decide whether the plaintiff had released the defendant from liability.

[17] In any given case, where the defendant may be prejudiced by having the same jury decide the issue of the release after having decided the issues of liability and damages, the trial court may empanel a different jury to decide whether the plaintiff had intended to release the defendant from liability. Indeed, if the trial court decides to empanel a separate jury for this purpose, there would be nothing to prevent the separate jury from resolving this issue before, rather than after, a trial on liability.

and that failure is a proximate cause of the plaintiff's harm, then the person's failure to obey the law "is by law an act of negligence." The trial court explained to the jury that there were three different types of statutory negligence that might be involved in this case. First, the court explained that the defendant might have violated General Statutes § 14-237 by driving over a median strip. Second, the court explained that the defendant might have violated General Statutes § 14-218a by driving unreasonably fast. Finally, the court explained that Riccio might have violated General Statutes § 14-245 by failing to yield the right of way at an intersection.

The court also discussed the importance of the jury's finding that either of the statutory violations had been a proximate cause of the plaintiff's injuries, explaining that, "[f]or example, there might be a violation for failure to grant the right of way to oncoming traffic, but unless that violation was a proximate cause of the accident resulting in injury to the plaintiff, it would have no bearing on the case." The court discussed the doctrine of excuse, but did not give any specific examples of when a statutory violation might be excused and consequently not serve as a source of statutory negligence.

The defendant excepted to the charge, claiming that the trial court should not have given an example of proximate cause that might be construed as relating to the facts of this case. The defendant argued that the court "had indicated you would take out all references to the specific conduct here in giving the law, but you did give an example in which you referred to failure to yield the right of way. . . . [I]f Your Honor was going to give an example, then at least there should have been two. For instance, an example of crossing the median strip which could have been excused." The defendant also argued that "in talking about the vio-

lation of crossing the median strip, Your Honor did not reference excuse, and I think that, together with the one example that was given, slants that particular portion of the charge on excuse."

The trial court, on the record but out of the presence of the jury, discussed the merits of the defendant's exception with counsel for both parties and sought their assistance in crafting a supplemental charge. Counsel for the defendant indicated that he would be satisfied if the court informed the jury simply that the doctrines of proximate cause and excuse applied equally to any of the statutory violations of the defendant and Riccio. Counsel for the defendant asked the court, "Your Honor, would you be willing to say exactly what you just said and just say that they apply to all statutory violations?" The court acceded to the request, informing the jury that "the court gave you instructions as to statutory violations and proximate cause and as to excused violations. This applies to all statutory claims. These apply to all statutory claims." The defendant did not take an exception to these supplemental instructions.

On appeal, the defendant renews his argument that the trial court, in instructing the jury on proximate cause arising from a statutory violation, should not have given a single example that referred only to a failure to yield the right of way to oncoming traffic. The defendant argues that by "using the precise claim of statutory negligence against Anna Riccio, while omitting any reference to the statutory claim against the [defendant], the trial court greatly prejudiced the [defendant]."

We reject the defendant's claim because he failed to preserve this claim by taking an exception to the supplemental charge. See *Begley* v. *Kohl & Madden Printing Ink Co.*, 157 Conn. 445, 453–54, 254 A.2d 907

(1969). Indeed, the defendant never indicated that he remained dissatisfied with the court's use of a specific example; on the contrary, the defendant informed the court that its proposed curative instruction was "fine."[18] "An exception to a charge serves to alert the court to any claimed deficiency in the charge while there is still time for the court to take appropriate remedial action. See *Atlantic Richfield Co.* v. *Canaan Oil Co.*, 202 Conn. 234, 237–38, 520 A.2d 1008 (1987). The time has long since passed when a party can sit silent at the close of a charge and, if the verdict proves unpalatable, thereafter for the first time raise claims of error based on obvious inadvertencies in the charge. *Scott* v. *Barrett*, 212 Conn. 217, 222–23, 561 A.2d 941 (1989)." (Internal quotation marks omitted.) *Oakes* v. *New England Dairies, Inc.*, 219 Conn. 1, 7, 591 A.2d 1261 (1991). Having failed to take an exception to the court's instructions, the defendant cannot pursue this claim on appeal. *Begley* v. *Kohl & Madden Printing Ink Co.*, supra, 453–54 ("The trial court specifically corrected this portion of the charge after the plaintiffs excepted to it, and no further exception was taken by the plaintiffs. There is therefore no claim of error properly before us."); *Rossi* v. *Stanback*, 36 Conn. App. 328, 336, 650 A.2d 920 (1994) ("The plaintiffs, who now

---

[18] The defendant argues in his brief that he "acquiesced" in the supplemental charge because it pertained only to the court's earlier instruction on excused negligence, and not to proximate cause. This defies the precise language used by the court in delivering its supplemental charge, which referred to *both* the doctrine of excuse *and* proximate cause. Moreover, the defendant demonstrated after the court had given its supplemental charge that he knew he needed to take an exception. After the court gave the second charge, the defendant again objected to the court's initial failure to give an instruction on a fourth source of statutory negligence, which is not at issue in this appeal. The court noted that "I already have that," to which the defendant responded: "Just want to maintain that." Notably, the defendant did not take any similar steps with regard to the court's use of a specific example on statutory negligence.

claim that the trial court acted improperly, did not take an exception to the recharge. Consequently, they have failed to preserve this issue for appellate review.'').

## IV

Finally, the defendant claims that the jury's finding that Riccio had been 0 percent negligent was contrary to the evidence. The defendant argues that ''[i]t is undisputed that the accident occurred when Anna Riccio made a left turn from the northbound lane [of Windsor Avenue onto Rood Avenue]. . . . [N]o other conclusion is possible than that Anna Riccio failed to yield the right of way in violation of [General Statutes] §§ 14-245 and 14-242 (e).''

The defendant misses the point. The issue is not whether the jury reasonably could have found that Riccio did not violate these statutory provisions. Rather, the issue is whether the jury reasonably could have found that such statutory violations were not a proximate cause of the plaintiff's injuries. See *Madenford* v. *Interstate Lumber & Mill Corp.*, 153 Conn. 62, 64, 212 A.2d 588 (1965) (''[t]he court correctly charged the jury that a violation of this statute was negligence as a matter of law, but that to be actionable it must be proven to have been a proximate cause of the decedent's injury''). We conclude that, on the basis of the evidence presented at trial, the jury reasonably could have concluded that Riccio's actions were not a proximate cause of the plaintiff's injuries.

In reviewing the soundness of a jury's verdict, we construe the evidence in the light most favorable to sustaining the verdict. *Oakes* v. *New England Dairies, Inc.*, supra, 219 Conn. 12; *Bartholomew* v. *Schweizer*, 217 Conn. 671, 687, 587 A.2d 1014 (1991). If the jury could reasonably have reached its conclusion, the verdict

must stand. *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 57, 578 A.2d 1054 (1990).

The underlying facts are undisputed. The accident in question occurred in the town of Windsor on Windsor Avenue, a four lane divided highway with two lanes in each direction separated by a grassy median. Riccio's vehicle was in the northbound lane, and she was attempting to cross the southbound lanes to turn onto Rood Avenue. The defendant's police cruiser was traveling southbound when it struck the Riccio vehicle and the defendant lost control. His police cruiser continued traveling southbound, but crossed onto a lawn before coming back into traffic, where it struck a third person's vehicle. The cruiser again went onto another lawn, before coming back into traffic and crossing the grassy median, traveling southbound into the northbound lanes of Windsor Avenue. It was there that the cruiser collided with the plaintiff's vehicle.

There was ample testimony and evidence to enable a jury reasonably to find that the defendant's negligence was wholly responsible for the plaintiff's injuries. Witnesses testified that the defendant had been driving at least 50 miles per hour, although the posted speed limit was 35 miles per hour. The investigating officer testified that in his opinion, the accident would not have occurred had the defendant simply applied his brakes after striking the Riccio vehicle, because "you can assume he would have stopped prior to [striking the plaintiff's vehicle]." An accident reconstruction expert testified that if the defendant had been driving 40 miles per hour, which was above the posted speed limit but 10 miles per hour slower than the defendant's estimated speed, the defendant's cruiser would not have collided with the plaintiff's vehicle. This evidence was sufficient for the jury reasonably to find that the defendant's negligence was 100 percent responsible for

the plaintiff's injuries, and that Riccio's actions were not a proximate cause of those injuries.

The judgment is affirmed.

In this opinion the other justices concurred.