[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION TO STRIKE COUNT TWO OFMACHNIK'S APPORTIONMENT COMPLAINT FILED 10/5/95
I. FACTS PROCEDURAL HISTORY
By a writ, summons, and complaint filed with the court on July 11, 1995, with a return date of July 18, 1995, the plaintiff, Jenifer Catalan (Catalan) brought suit against Machnik Construction Co., Inc. (Machnik, Inc.), Michael Lowney (Lowney), Trucklease Corporation (Trucklease), H.P. Hood, Inc. (Hood, Inc.), and Natver Mangrola (Mangrola) for personal injuries suffered as a result of a multi-car accident that occurred on February 19, 1995.
According to the complaint, the facts are as follows. Catalan was a passenger in her automobile travelling north on Interstate 95. The car was driven by Christian Chicles (Chicles). Paul Machnik (Machnik), who was driving a pick-up truck owned by the defendant Machnik, Inc., collided with another vehicle causing a chain reaction in which Catalan was injured. Count one of the complaint alleges that Catalan's injuries were caused by the negligence of Paul Machnik, agent CT Page 1505 for Machnik, Inc., due to violations of certain enumerated highway statutes including General Statutes §§ 14-222 (a),14-218a and 14-219. Count two of the complaint alleges similar acts of negligence against Lowney who was operating a tractor trailer truck owned by co-defendant Trucklease. Count three seeks to hold Trucklease vicariously liable for the negligence of its employee/agent Lowney. Count four also states a cause of action in negligence against co-defendant Hood, Inc., whose vehicle, driven by Jamie Burgess (Burgess) as Hood, Inc's agent, was also involved in the multi-car pile-up. Finally, count five of the complaint is brought against Mangrola, whose automobile was being operated by Ishvar Oesai with Mangrola's permission, when it collided into the rear of Catalan's vehicle.
On August 3, 1995, the plaintiff moved to cite-in Ishvar Oesai as a party defendant pursuant to General Statutes §§ 52-102
and 52-572h. Said motion was granted by the court (Hendel, J) on February 14, 1996. On September 1, 1995, co-defendant Hood, Inc., moved to cite-in Chicles, the driver of Catalan's car, and Ernest Cipolli[1] as apportionment defendants for the purpose of apportioning liability for the plaintiff's injuries. Said motion was granted by the court (Hurley, J.) on October 31, 1995.[2]
Pursuant to Public Acts 1995, No. 95-111, defendant Machnik filed a writ, summons, and apportionment complaint against apportionment defendants Jamie Burgess (Burgess) and John Doe, an unknown individual. Count one of the apportionment complaint alleges that Burgess, the operator of Hood, Inc.'s vehicle, was negligent in its operation and control and is therefore liable for some of the plaintiff's injuries. Count two of the apportionment complaint makes similar claims against the unknown apportionment defendant John Doe. The apportionment complaint alleges that John Doe, who was allegedly also driving northbound on Interstate 95, "suddenly, and without warning, negligently and illegally brought his vehicle to a stop" in the high speed lane. Thus, John Doe is supposedly the "missing link" in this pile-up on Interstate 95. In its prayer for relief, Machnik seeks an apportionment of liability pursuant to General Statutes § 52-572h(c).[3]
By a motion filed with the court on October 5, 1995, Catalan seeks to strike count two of Machnik's apportionment complaint. In support thereof, Catalan claims that (1) fictitious name CT Page 1506 pleading is not allowed under Connecticut's rules of practice; (2) John Doe is immune from liability because the court lacks in personam jurisdiction over him, and (3) allowing an unidentifiable defendant in the case for apportionment purposes violates the spirit and intent of Tort Reform II.[4]
In opposition to the plaintiff's motion to strike, Machnik claims that Catalan has no standing to challenge the sufficiency of the apportionment complaint. In the alternative, the defendant asserts that fictitious name pleading is allowed in Connecticut for apportionment purposes only, and that an otherwise immune person can still be brought in to the case to apportion liability and damages. Finally, Machnik claims that John Doe pleading does not violate the public policy of Tort Reform II. Both parties have submitted briefs in support of their respective positions.
II. DISCUSSION
Under section 152 of the Practice Book, a motion to strike is proper and permissible "[w]henever any party wishes to contest (1) the legal sufficiency of the allegations of any complaint, counterclaim, or cross claim, or any one or more counts thereof, to state a claim upon which relief can be granted." Practice Book § 152(1). A motion to strike is also properly used to contest "the legal sufficiency of any answer to any complaint, counterclaim, or cross-complaint, or any part of that answer including any special defense contained therein . . ." Practice Book 152(5).
At the outset, the court acknowledges that plaintiff's motion to strike does not fit perfectly into any of the categories listed above. At issue is the legal sufficiency of the defendant's apportionment complaint. It could be reasonably argued that plaintiff's motion to strike is procedurally improper because she is in effect saying that this court does not have personal or even perhaps subject matter jurisdiction over a "John Doe" apportionment defendant. Such issues are more properly raised in a motion to dismiss. Practice Book § 143. The court feels, however, that the plaintiff's motion to strike is proper because it calls into question the legal sufficiency of naming a John Doe defendant in an apportionment complaint which indirectly necessitates, as set forth below, a discussion of personal jurisdiction as a secondary matter. The court is faced with an entirely new type of pleading not contemplated by our Practice Book. Thus, while the Practice Book's procedural niceties may not CT Page 1507 perfectly fit the issues to be addressed, the court, in reaching its decision, relies on Practice Book § 6 which states, "[t]he design of these rules being to facilitate business and advance justice, they will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice."
A determination of the issues raised in the plaintiff's motion to strike depends on a close reading of Public Act 95-111. The Act entitled, an "Act Concerning Apportionment of Liability" was meant to clarify the many procedural and substantive issues that the trial courts of this state have grappled with since the legislature abandoned the common law principle of joint and several liability, and sought to apportion liability among joint tortfeasors with the passage of Tort Reform I[5] and II.
A. Standing
Before reaching the merits of the plaintiff's motion to strike, the court must decide whether the plaintiff has standing to attack the sufficiency of Machnik's apportionment complaint. Standing relates to the court's subject matter jurisdiction. "Jurisdiction of the subject matter is a question of law and cannot be waived or conferred by consent . . . in the trial court . . . . Once brought to the attention of the court, regardless of the form of the motion, it must be acted upon." (Citation omitted.) In re Judicial Inquiry No. 85-01, 221 Conn. 625,629, 605 A.2d 545 (1992).
Relying on Public Act 95-111, § 1(f) which states that, "[t]his section shall be the exclusive means by which a defendant may add a person who is or may be liable pursuant to section 52-572h
of the general statutes for a proportional share of the plaintiff's damages as a party to the action," the defendant asserts that the plaintiff has no right to challenge the sufficiency of the apportionment complaint because the power and ability to file such a complaint rests with the defendant.
Moreover, Machnik asserts that under the terms of the Act, the plaintiff of the underlying action is given the affirmative right, within sixty days of the return date of the apportionment complaint, to assert any claim against the apportionment defendants arising out of the transaction or occurrence that is the subject matter of the original complaint. Public Acts 95-111, § 1(d). Additionally, the statute gives the apportionment CT Page 1508 defendant all the remedies available to an original defendant including the right to "assert defenses, set-offs or counterclaims against any party." Public Act 95-111, § 1(b). Thus, because the legislature knew how to grant affirmative rights to the plaintiff and the apportionment defendant, yet failed to specifically grant the plaintiff the right to challenge the legal sufficiency of the apportionment complaint, Machnik infers that Catalan had no standing to raise a motion to strike, and by implication, any procedural motion, against the apportionment pleading.
Machnik's reasoning, however, rests on an overly restrictive and narrow interpretation of the statute. While it is true that Public Act 95-111, § 1(f) states that the Act shall be the exclusive means by which a defendant may add a person who may be liable for a proportion of the plaintiff's damages pursuant to52-572h, said section is more properly read as an attempt by the legislature to end the confusion in the trial courts concerning the proper procedure to cite-in non-defendants for the purpose of apportioning liability. Prior to this Act's passage, Connecticut's lower courts were split as to whether a non-defendant could be brought in for purposes of apportioning liability by way of joinder of necessary persons pursuant to General Statutes § 52-102 or via an impleader action pursuant to General Statutes § 52-102a. Thus, § 1(f) of Public Act 95-111 ends the debate, and establishes the exclusive procedure for bringing in previously unnamed individuals or entities who automatically become parties under section § 1(a) of Public Act 95-111.
Thus, in order to decide whether the plaintiff has the ability to challenge the sufficiency of the apportionment complaint, the court must look to other sections of the Act. Under Public Act 95-111 § 1(a), "[t]he person upon whom the apportionment complaint is served, hereinafter called the apportionment defendant, shall be a party for all purposes . . . ." (Emphasis added.) Section 1(b) of Public Act 95-111 further states that "[t]he apportionment complaint shallbe equivalent in all respects to an original writ, summons, andcomplaint, except that it shall include the docket number assigned to the original action and no new entry fee shall be imposed." (Emphasis added.). Based on the above quoted language, the court concludes that the plaintiff has a right to challenge the sufficiency of an apportionment complaint because an apportionment defendant shall be treated as a party "for all purposes." All purposes must, by its plain meaning, encompass the CT Page 1509 right of the plaintiff to challenge the pleadings of any party to the action. While it is true that the apportionment complaint is filed by a defendant against a non-defendant, who once served becomes a party, the statute treats such pleadings as the "equivalent in all respects to the writ, summons, and complaint" of the original action, giving the plaintiff a real interest in its form and content. To hold otherwise, would lead to absurd results.
In this case for example, Machnik seeks to bring in named and unnamed apportionment defendants. Assuming arguendo, that it is proper for a defendant to apportion-in a "John Doe", among all defendants, either apportionment or otherwise, it is in their best interest to allow such a pleading because their share of the plaintiff's damages would be potentially reduced by the proportionate liability of "John Doe." Thus, no defendant would seriously consider challenging the sufficiency of such a complaint. The plaintiff, on the other hand, has a real interest in challenging a John Doe pleading. If the jury were to apportion liability among the original defendants and the apportionment defendants, including John Does, then it would be impossible for the plaintiff to be fully compensated for her injuries because a share of the liability could be attributed a John Doe from whom it could not collect proportional damages. If the plaintiff could not challenge the sufficiency of an apportionment complaint, named defendants would have the incentive to apportion-in real or imagined John Doe apportionment defendants in order to reduce their liability and thus their damages. To straight-jacket the plaintiff and cordon off the apportionment complaint from review and attack by a plaintiff would lead to absurd and inequitable results.
"It is an elementary rule of construction that statutes should be considered as a whole, with a view toward reconciling their separate parts in order to render a reasonable overall interpretation; the application, moreover, of common sense to the statutory language is not to be excluded . . . . We must avoid a consequence which fails to attain a rational and sensible result which bears most directly on the object which the legislature sought to obtain." (Citations omitted; internal quotation marks omitted.). Peck v. Jacquemin, 196 Conn. 53, 63-64, 491 A.2d 1043
(1985). Based on the language of statute as well as a common sense understanding of the apportionment practice, the court concludes that a plaintiff has the right to raise any procedural or substantive motions against an apportionment complaint. CT Page 1510
B. "John Does" Apportionment
Having determined that the plaintiff has standing to challenge the sufficiency of the apportionment complaint, the court must now turn to the substantive issues raised by the plaintiff's motion to strike. The plaintiff proffers that "John Doe" pleading is not authorized in Connecticut, and therefore asserts that count two of the complaint is legally insufficient. In opposition, Machnik relies on the case ofGallagher-Crespo v. Storz, Superior Court, judicial district of New Haven at New Haven, Docket No. 94-0364073 (April 7, 1995, Fracasse, J.) for the proposition that a John Doe defendant can be cited-in for purposes of apportionment only.
Connecticut's trial courts are split on the propriety of using fictitious names in civil actions when the identity of the defendant is unknown at the commencement of the suit. "There have been very few judicial pronouncements on the subject." Barber v. City of Hartford, 9 CSCR 98 (December 21, 1993, Freed, J.) "Statutes usually provide that a party defendant, whose name is unknown, may be sued by a fictitious name under specified circumstances, but in some jurisdictions the inclusion of fictitious defendants in an action against named defendants is not permissible." 67A C.J.S. Parties § 115.
Connecticut General Statutes § 52-54 provides in part that "[t]he service of a writ of summons shall be made by the officer reading it and the complaint accompanying it in the hearing of the defendant or by leaving an attested copy thereof with him or at his usual place of abode . . . ." Likewise, 52-57
(a) states "[e]xcept as otherwise provided, process in any civil action shall be served by leaving a true and attested copy of it . . . with the defendant, or at his usual place of abode, in this state."
Relying on these statutes, Connecticut courts have held that naming "John Doe" as a defendant in a complaint and summons is improper because Connecticut does not have a fictitious name statute, nor does the Practice Book authorize use of such name. See Hackett v. State, judicial district of Hartford-New Britain at Hartford, Docket No. 352161 (November 28, 1990, Stengel, J.) (granting defendant "John Doe's" motion to dismiss for lack of personal jurisdiction over unnamed employees and officials of the CT Page 1511 Department of Corrections for an alleged federal civil rights violation.).
While instructive, the above-cited cases concern the propriety of naming John Doe as the primary defendant in a case, and do not address the issue of whether "John Doe" can be named as an apportionment defendant.[6] This issue was addressed, however, in Gallagher-Crespo v. Storz, supra, where the court held that:
 Generally, the rule is that, for in personam actions, there is no authority to proceed against unknown persons in the absence of a statute allowing such an action . . . . The general rule should not apply to an unidentified person designated a `party' for apportionment only because there can be no judgement for or against that `party'.
 In the present case, John Doe is being designated a `party' for apportionment purposes only. Such a `party' need not plead or even attend trial for his or her percentage of negligence to be considered.
(Citation omitted.)
The court there allowed the defendant to cite-in an unknown defendant for apportionment purposes only. Machnik's reliance on this case, however, is misplaced. First, the case was decided prior to the adoption of Public Act 95-111. Secondly, allowing a defendant to cite in a John Doe defendant, even prior to the passage of Public Act 95-111, is violative of the spirit and intent of Tort Reform II as recently clarified by our Supreme Court in Donner v. Kearse, 234 Conn. 660, 670, ___ A.2d ___ (1995).
Under Public Act 95-111, § 1(a), "a defendant in any civil action to which section 52-572h . . . applies may serve a writ, summons and complaint upon a person not a party to the action who is or may be liable . . . for a proportionate share of the plaintiff's damages . . . ." (Emphasis added.). The writ, summons, and complaint, "shall be served within one hundred twenty days of the return date specified in the plaintiff's original complaint." Id. Once properly served, the so called apportionment defendant becomes a party for all purposes. CT Page 1512
By its plain and unambiguous language, the statute contemplates that an apportionment complaint be actually served on the person to be apportioned in. Such service is impossible against a unknown, unnamed defendant. A review of the sheriff's return of Machnik's apportionment complaint demonstrates that in hand service was made against Burgess only. Thus, under the mandates of the statute, John Doe is not a proper apportionment defendant because he was never served with the complaint, and thus he can never attain party status. To allow an unserved "John Doe" to be a party for purposes of apportionment would violate Public Act 95-111's clear mandates.
C. Policy of Apportionment
Machnik claims that allowing a John Doe apportionment defendant would not be contrary to the policy of Tort Reform II, but actually advance the legislature's interest in ensuring that each defendant be liable only for their proportionate share of damages based on their respective liability. In support thereof, Machnik again relies on Gallagher-Crespo, supra, where the court stated that:
 [t]he legislative policy enacted by Tort Reform II, is to hold parties liable only for their proportionate share of recoverable damages. If the defendant in the present case is not allowed to designate John Doe a `party' solely for apportionment, then the purpose of General Statutes Sec. 52-572h will be frustrated, resulting in the defendant being deprived of the opportunity to have her liability reduced in proportion to the potential liability of another, albeit unknown.
Some months after the decision of Gallagher-Crespo,
however, our Supreme Court had the opportunity to clarify the legislative history of Tort Reform II in comparison to that of Tort Reform I in the case of Donner v. Kearse, 234 Conn. 660,668 (1995). The court stated in part that:
 [w]hile Tort Reform I provided that the jury, in determining the percentage of responsibility of a particular defendant, could also consider the entire universe of negligent persons, Tort Reform II limited this universe to only those individuals who were parties to the legal action or who were specifically CT Page 1513 identified in 52-572h(n).
(Emphasis added.)
The court further noted that:
 [the legislative history of § 52-572h] demonstrates that the legislature, in enacting Tort Reform II, intended to limit the universe of negligence to be considered to only particular, identifiable persons.
If a defendant wished to broaden the universe of negligence to be considered in any given case, the legislative placed the burden upon him to implead that nonparty in accordance with § 52-102. (Emphasis added.) Id. 669-70.
To allow the defendant to name a John Doe apportionment defendant would be an unjustified departure from the legislative intent of Tort Reform II because it would expand, rather that limit, the universe of negligence to non-particular, unidentifiable persons from whom the jury would then determine the percentage of responsibility for the plaintiff's injuries. Allowing such a practice would have the practical effect of converting Tort Reform II into the prior tested and rejected policies of Tort Reform I.
Therefore, the court finds that Tort Reform II requires a defendant to limit his choice of apportionment defendants to particular, identifiable person who, after being actually served, become parties to the suit. A "John Doe" apportionment defendant can never fit into this class of persons, and therefore can never be a part of a legally sufficient apportionment complaint.
D. Immunity
Finally, the plaintiff asserts that John Doe is an improper apportionment defendant based on immunity from suit. In support of her claim, the plaintiff asserts that John Doe is immune based on the court's failure to obtain in personam jurisdiction over him. In opposition, the defendant asserts that there is a split of authority in the trial courts of this state as to whether an immune person can be considered for the purposes of apportioning liability under General Statutes § 52-572h. CT Page 1514
Before reaching the merits of the issue, the court notes that the issue of lack of personal jurisdiction over any defendant, John Doe or otherwise, is more properly decided by a motion to dismiss and not by a motion to strike. However, having already decided that it is legally insufficient and improper to have a John Doe count in an apportionment complaint, the court will address the issue of immunity in the interest of judicial economy.
Immunity from suit can arise from many sources, but the most common include "lack of personal jurisdiction, lack of subject matter jurisdiction, governmental immunity, sovereign immunity, etc," (Emphasis added.) Wilson v. State, 9 CSCR 529
(April 11, 1994, Sullivan, J.) Prior to the passage of Public Act 95-111, the court acknowledges the defendant's claim that there was a split of authority as to whether an immune person could be cited in for purposes of apportioning liability under General Statutes § 52-572h. See Bouchard v. Eaton, Superior Court, judicial district of New London at New London, Docket No. 105251 (August 1, 1995, Hendel, J.). The legislature, however, in enacting Public Act 95-111, § 1(c) resolved this split when it stated "no person who is immune from liability shall be made an apportionment defendant . . . ." Thus, because John Doe can never be properly served, the court can never get personal jurisdiction over him, and therefore he would be immune from suit as the plaintiff asserts.
Based on a plain reading of Public Act 95-111, the court concludes that it is improper to name a "John Doe" defendant in an apportionment complaint because it would be contrary to the clear mandates of Public Act 95-111 as well as the legislative intent of Tort Reform II. The court therefore concludes that count two of Machnik's apportionment complaint should be stricken based on its failure to state a claim for which relief can be granted.
III. CONCLUSION
For the above stated reason, the plaintiff's motion to strike count two of the apportionment complaint is granted.
Austin, J.