[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO STRIKE SPECIAL DEFENSES AND COUNTERCLAIM
 Factual Background
The plaintiff, National Loan Investors, L.P., has filed a complaint against the defendant, Joseph Reale, seeking to foreclose a judgment lien. The complaint alleges that the defendant executed a promissory note on March 1, 1991. This note later became the subject of a lawsuit commenced by the FDIC. Judgment was eventually entered against the defendant in 1995. In 1997, the judgment was assigned to the plaintiff, who subsequently filed a judgment lien against the defendant's one half interest in his home. The present action was commenced to foreclose that judgment lien.
The defendant has filed an answer, three special defenses and two counterclaims. The plaintiff has filed a motion to strike the defendant's special defenses and counterclaims.
 DISCUSSION
The purpose of a motion to strike is to contest the legal sufficiency of the allegations of a pleading to state a claim upon which relief can be granted. See Practice Book § 10-39, formerly § 152; Peter-Michael, Inc. v. Sea Shell Associates,244 Conn. 269, 270, 709 A.2d 558 (1998). "A motion to strike is CT Page 15187 the proper method of challenging the legal sufficiency of a special defense." Krasnow v. Christensen, 40 Conn. Sup. 287, 288,492 A.2d 850 (1985); see also, e.g., Donner v. Kearse,234 Conn. 660, 664, 662 A.2d 1269 (1995). A motion to strike may also properly be used to challenge the legal sufficiency of a counterclaim. See Fairfield Lease Corp. v. Romano's Auto Service,4 Conn. App. 495, 496, 495 A.2d 286 (1985).
In ruling on a motion to strike, "the trial court [has an] obligation to take the facts to be those alleged in the special defenses and to construe the defenses in a manner most favorable to sustaining their legal sufficiency." Connecticut National Bankv. Douglas, 221 Conn. 530, 536, 606 A.2d 684 (1992). "A motion to strike is properly granted if the [challenged pleading] alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix Medical Systems, Inc. v. The BOC Group,224 Conn. 210, 215, 618 A.2d 25 (1992). The court, in ruling on the motion, may consider only those grounds set forth in the motion. See Blancato v. Feldspar Corp., 203 Conn. 34, 44, 522 A.2d 1235
(1987).
 First Special Defense: Homestead Exemption
Connecticut's homestead exemption appears at General Statutes § 52-352b(t). It exempts up to $75,000 of the homestead of the exemptioner from "any form of process or court order for the purpose of debt collection." General Statutes § 52-352a(c). The exemption was enacted through Public Act No. 93-301, which provides: "This act shall take effect October 1, 1993, and shall be applicable to any lien for any obligation or claim arising on or after said date." Public Acts 1993, No. 93-301, § 3. Whether a judgment lien "arises" at foreclosure or the date of the original note is at issue in the present case. The plaintiff claims that because the debt that the present action is based upon was incurred prior to October 1, 1993, the homestead exemption does not apply. The defendant, on the other hand, argues that the claim that the plaintiff is attempting to enforce is the judgment, which was entered in 1995, not the 1991 promissory note. Since the 1995 judgment arose after October 1, 1993, the defendant argues that the exemption applies.
The meaning of the effective date provision in Public Act 93-301, § 3 has been considered by some of Connecticut's trial courts. These courts tend to look at the date of the underlying obligation, not the subsequent lien or judgment, in CT Page 15188 determining whether the exemption applies. See, e.g., Centerbankv. Associated Risk Services, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 355042 (February 7, 1994) (Booth, J.) (11 CONN. L. RPTR. 57) ("[i]t would appear that the Act is simply inapplicable unless the original obligation or claim for which judicial remedy is now sought arose after the effective date of the Act."). Thus, it has been held that the homestead exemption does not apply to offset liability for reimbursable public assistance where the assistance was received between July 1, 1968 and May 1, 1982 State of Connecticut v. Lindsay, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 552547 (February 26, 1997) (Aurigemma,J.) (19 CONN. L. RPTR. 205) ("the defendant's obligation to reimburse the state . . . arose between 1968 and 1982, when she received grants of public assistance"). Similarly, it has been held the exemption does not apply against a judgment for tortious conduct where the conduct occurred prior to October 1, 1993. Carpenter v.Rand, Superior Court, judicial district of New London, Docket No. 543855 (April 2, 1998) (Handy, J.) (21 CONN. L. RPTR. 605).
In addition, several federal bankruptcy decisions have interpreted Public Act 93-301, § 3 in a similar fashion. SeeIn re Corson, 206 B.R. 17, 21 (Bankr. D. Conn. 1997) (exemption does not apply because contracts giving rise to debt were executed before October 1, 1993); In re Ahmed, 194 B.R. 540, 544
(Bankr. D. Conn. 1996) (exemption does not apply where obligations or claims arose before effective date); Gemat v.Belford, 192 B.R. 601, 605 (D. Conn. 1996) (exemption does not apply retroactively); In re Morzella, 171 B.R. 485, 487 (Bankr. D. Conn. 1994) ("[t]he most reasonable interpretation of this section is that the Act applies to any prejudgment attachment . . . or judgment lien . . . placed on the exemptioner's residence for the purpose of collecting a debt incurred as a result of an obligation or claim arising on or after October 1, 1993 ").
There is also case law suggesting that such an interpretation of the statute is mandated by the federal constitution. SeeEdwards v. Kearzey, 96 U.S. 595, 24 L.Ed. 793 (1877). The Court in Edwards held that it would be unconstitutional to apply a North Carolina law granting a homestead exemption against debt collection to debts that predated the effective date of the law, stating: "The remedy subsisting in a State when and where a contract is made and is to be performed is a part of [the] obligation, and any subsequent law of the State which so affects CT Page 15189 that remedy as substantially to impair and lessen the value of the contract is forbidden by the Constitution, and is, therefore, void." Id., 607. It follows that only those exemptions that exist at the time of the formation of the underlying contract apply, even if later exemptions are enacted before a judgment on that contract is obtained.
The reasoning of the prior Superior Court and bankruptcy decisions is consistent with the language of the act. The act uses the terminology "obligation or claim." Black's Law Dictionary defines "obligation" as "any duty imposed by law, promise, contract, relations of society, courtesy, kindness, etc." Black's Law Dictionary (5th Ed. 1979). It is this court's opinion that the legislature meant the exemption not to apply to a lien arising from a contract entered into in 1991. Accordingly, the plaintiff's motion to strike is granted with respect to the defendant's first special defense.
 Second Special Defense: Unclean Hands
The defendant alleges in his second defense that the plaintiff is barred from foreclosing its lien under the doctrine of unclean hands. "It is a fundamental principle of equity jurisprudence that for a complainant to show that he is entitled to the benefit of equity he must establish that he comes into the court with `clean hands.'" Eldridge v. Eldgridge, 244 Conn. 523,536, 710 A.2d 757 (1998).
While it is true that many Superior Court judges have held that this defense is recognized as valid only where it is directed at the validity or enforceability of the note, see e.g.Monument Realty v. Youmatz, Judicial District of Litchfield, #071092 (February 10, 1997) (Pickett, J.) (18 CONN. L. RPTR. 589), there are also many judges who have taken a broader view in holding that such defenses may be asserted for other reasons.
This court has previously so held, and believes that this is the better view. Bank of Boston Connecticut v. Capitol WestAssociates Limited Partnership, et al., Superior Court, Judicial District of Hartford-New Britain at Hartford, CV 91-50028 (Freed, J.) (17 CONN. L. RPTR. 767) (1992); see also Dime Savings Bank v. Albir etal., CV 93-013258S, Judicial District of Stamford-Norwalk, (D'Andrea, J.) (1995).
As part of the rationale for so holding, this court has CT Page 15190 opined that "a foreclosure action is equitable in nature. Boretzv. Segor, 124 Conn. 320, 324 (1938). In the event that on a trial, the court found that the plaintiff's conduct was inequitable, it could withhold foreclosure on such equitable considerations and principles. Lettieri v. American Savings Bank,182 Conn. 1, 12 (1980); Hamm v. Taylor, 180 Conn. 491, 497
(1980)." Bank of Boston, Connecticut v. Capitol West AssociatesLimited Partnership, et al, supra, 5.
The motion to strike the special defense of unclean hands is therefore denied.
 Third Special Defense: CUTPA
The defendant alleges in his third special defense that the plaintiff violated CUTPA by mailing a letter to the defendant and his wife, who is not a party to this action. The letter allegedly contained inaccurate statements of law and was coercive in nature.
CUTPA has been recognized as a valid defense in a foreclosure action. See 345 Benham Avenue v. Madison Square, Superior Court, judicial district of New Haven, Docket No. 385225 (December 2, 1996) Celotto, J.), and cases cited therein.
Other courts, however, have disagreed and held that CUTPA may be employed only in the form of an action or counterclaim against the party who violates that statute. G.E. Capital v. Klett, CV 95-0552540 Judicial District of Hartford, Satter, J. (16 CONN. L. RPTR. 186) (February 21, 1996).
This court believes this to be the better view. The motion to strike the third special defense is granted.
 First Count of Counterclaim: CUTPA
The first count of the defendant's counterclaim attempts to set forth an independent claim for a violation of CUTPA. It alleges that in sending the letter to the defendant and his wife, the plaintiff violated CUTPA.
The intent behind the Connecticut Unfair Trade Practices Act is set forth in General Statutes § 42-110b(a), which states: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." The term "trade or commerce" is defined as CT Page 15191 "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." General Statutes § 42-110a(4).
The test for whether conduct violates CUTPA consists of three prongs: "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]." (Alterations in original; internal quotation marks omitted.) A-GFoods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 215,579 A.2d 69 (1990). All three criteria need not be satisfied, but rather the practice may be deemed unfair based on the degree to which it meets one of the criteria. See Jacobs v. HealeyFord-Subaru Inc., 231 Conn. 707, 725-26, 652 A.2d 496 (1995). A claim under CUTPA must be pleaded with particularity to permit evaluation of the legal theory upon which the claim is based. SeeSorisio v. Lenox, Inc., 701 F. Sup. 950, 962 (D. Conn. 1988), aff'd, 863 F.2d 195 (2d Cir. 1988); S.M.S. Textile v. Brown,32 Conn. App. 786, 797, 631 A.2d 340 (1993).
The defendant bases his CUTPA counterclaim on a single act of the plaintiff. Although most courts hold that a CUTPA claim can be based on a single unfair act or practice; see generally Yostv. A-1 Oil Co., Superior Court, judicial district of Tolland at Rockville, Docket No. 063256 (March 16, 1998) (Sullivan, J.); the defendant's counterclaim is legally insufficient for other reasons.
It has been held that in order to state a legally sufficient claim under CUTPA, the pleader must allege that he has suffered an ascertainable loss. See, e.g., Season v. Toepke, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 138296 (May 26, 1995) (Karazin, J.); Zoological Research v.Crabtree-Haas, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 238016 (September 16, 1992) (Katz, J.) (7 CONN. L. RPTR. 366, 7 C.S.C.R. 1144); Ross v. CompanyStore, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 115710 (October 1, 1991) (Ryan, J.) (5 CONN. L. RPTR. 62, 6 C.S.C.R. 942). The CT Page 15192 ascertainable loss requirement may be met by proof that the plaintiff "has purchased an item partially as a result of an unfair or deceptive practice or act and that the item is different from that for which he bargained." Hinchliffe v.American Motors Corp., 184 Conn. 607, 614-15, 440 A.2d 810
(1981).
The first count of the defendant's counterclaim alleges that the plaintiff sent a letter to both the defendant and his wife, and that "[t]he foregoing constitutes an unfair method of competition and/or deceptive act or practice in the conduct of any trade or commerce, in violation of [CUTPA]." There is no allegation in the defendant's counterclaim concerning which legal theory the counterclaim is based upon. Moreover, the allegations in the counterclaim are nothing more than legal conclusions. Nor is there any allegation that the defendant has suffered any ascertainable loss. In fact, comparing the allegations contained in the first count of the counterclaim to the definition of ascertainable loss as set forth in Hinchliffe reveals that the type of conduct alleged — the sending of a letter in attempt to collect on a debt — is far removed from the type of consumer injury that CUTPA was designed to remedy. The defendant is not alleging that he purchased goods or services from the plaintiff. Examining the definition of "trade or commerce" as set out in the statute itself further confirms this notion. The alleged conduct simply is not "trade or commerce" as defined. See Murphy v.McNamara, 36 Conn. Sup. 183, 195-96, 416 A.2d 170 (1979). Accordingly, for these reasons, the first count of the plaintiff's counterclaim is legally insufficient and is therefore stricken.
 Second Count of Counterclaim: Infliction of Emotional Distress
The second count of the defendant's counterclaim alleges that the plaintiff, in sending the aforementioned letter to the defendant and his wife, should have realized that such conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm to the plaintiff. Although the defendant does not use the term "negligent," it may be presumed that the defendant's claim is under the theory of negligent infliction of emotional distress.[1]
"A cause of action for negligent infliction of emotional distress . . . requires that the facts alleged by the [pleader] demonstrate the elements necessary to establish negligence." CT Page 15193Meehan v. Yale New Haven Hospital, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 320418 (March 12, 1996) (Hartmere, J.) (16 CONN. L. RPTR. 437), citingMontinieri v. Southern New England Telephone Co.,175 Conn. 337, 341 398 A.2d 1180
(1978). "The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381,384, 650 A.2d 153 (1994).
The second count of the defendant's counterclaim contains no allegation of any actual injury. Logically, there is also no allegation regarding causation. Thus, the defendant, in the second count of his counterclaim, has failed to state a claim upon which relief can be granted. Accordingly, the plaintiff's motion to strike the second count of the defendant's counterclaim is granted.
 CONCLUSION
In sum, the first and third special defenses, as well as both counts of the defendant's counterclaim are stricken. The motion to strike the second special defense is denied.
Freed, J.