CHARLES S. BRADFORD ET AL. *v.* STEVEN HERZIG
(12192)

DUPONT, C. J., LAVERY and SCHALLER, Js.

Argued December 10, 1993—decision released March 15, 1994

*Miles F. McDonald, Jr.,* with whom, on the brief, was *Luke M. Pittoni,* for the appellants-appellees (plaintiffs).

*Daniel E. Ryan III,* with whom, on the brief, was *W. Patrick Ryan,* for the appellee-appellant (defendant).

DUPONT, C. J. The plaintiffs, Charles S. Bradford and Marjorie K. Bradford,[1] are appealing from the judgment of the trial court in a medical malpractice action rendered in accordance with a jury verdict for them against the defendant physician, Steven Herzig. They claim that the trial court improperly accepted the verdict because (1) contributory negligence was not pleaded as a special defense by the defendant, but the jury verdict assigned 30 percent contributory negligence to the plaintiff, and (2) the jury verdict assigned 25 percent of the negligence involved in the plaintiff's harm to Eckhart Doering, a nonparty physician who treated him.[2] That part of the judgment reducing the plaintiff's award against the defendant by the amounts attributed to contributory and nonparty negligence is reversed and we remand the case to the trial court for judgment in accordance with this opinion.

The plaintiffs brought suit against the defendant alleging that the plaintiff had suffered injuries as a result of the negligence of the defendant physician, who had treated the plaintiff from May, 1986, to December 18, 1987. The plaintiff claims that the defendant's negligence caused him permanent injury, including "chronic and acute renal failure requiring lifetime dialysis," "depression," "personality, behavioral, and psychological injury," and the substantial impairment of his earning capacity and life expectancy. In his answer, the defendant denied the plaintiff's allegations of negligence, and did not plead the contributory negligence of the plaintiff as an affirmative defense.

In its instructions to the jury, the trial court stated at the outset that a "defendant may admit some of [the

[1] Marjorie K. Bradford seeks damages for loss of consortium. In this opinion, the term plaintiff refers to Charles S. Bradford.

[2] The defendant filed a cross appeal alleging that the trial court had improperly failed to reduce the plaintiff's award by the correct amount of collateral source payments. This claim was abandoned by the defendant and is not at issue here.

plaintiff's allegations], he may deny some of them, or he may set up some new matter as a defense. *That's not an issue here, because all we have here is the plaintiff's complaint and the allegations which have been denied by the plaintiff.*" (Emphasis added.) The trial court did not give an instruction on the concept or definition of contributory negligence, mentioning contributory negligence only when reviewing the verdict forms given to the jury.

The verdict forms submitted to the jury contained a question asking the jury to fill in the percentage of negligence, if any, of the plaintiff. Upon reviewing the verdict forms for the jury toward the conclusion of the charge, the court stated: "Percentage of negligence of the plaintiff, Charles Bradford, that's for you to fill in." The plaintiff excepted to the mention of contributory negligence in the charge on the ground that it had not been pleaded by the defendant. Readdressing the jury on the verdict forms, the court stated that, in accordance with Connecticut's comparative negligence statute; General Statutes § 52-572h;[3] if the negligence of the plaintiff exceeded 50 percent, the jury was required to return a defendant's verdict. After the jury retired,

---

[3] General Statutes § 52-572h provides in relevant part: "(b) In causes of action based on negligence, contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages resulting from personal injury . . . if the negligence was not greater than the combined negligence of the person or persons against whom recovery is sought . . . . The economic or noneconomic damages allowed shall be diminished in the proportion of the percentage of negligence attributable to the person recovering which percentage shall be determined pursuant to subsection (f) of this section. . . .

"(f) The jury or, if there is no jury, the court shall specify: (1) The amount of economic damages; (2) the amount of noneconomic damages; (3) any findings of fact necessary for the court to specify recoverable economic damages and recoverable noneconomic damages; (4) the percentage of negligence that proximately caused the injury . . . in relation to one hundred per cent, that is attributable to each party whose negligent actions were a proximate cause of the injury . . . and (5) the percentage of such negligence attributable to the claimant. . . ."

the court expressed concern about not mentioning the element of the plaintiff's contributory negligence in the charge, but took no action on the matter.

The jury answered special interrogatories declaring that the defendant was negligent on specific dates and that his negligence was the proximate cause of the plaintiff's injuries. The jury also concluded that the non-party Doering's care was not a superseding cause of the plaintiff's injuries.[4] In its verdict, however, the jury assessed the relative negligence of the physicians as 75 percent on the part of the defendant and 25 percent on the part of Doering. The jury also found the plaintiff to have been 30 percent contributorily negligent. The court rendered a judgment against the defendant in accordance with the verdict, reducing the damages for the plaintiff by 30 percent and assigning responsibility for 75 percent of that amount to the defendant.[5] The plaintiff appeal from that judgment.

[4] The special interrogatories were presented and answered as follows:
"1. Do you find the defendant, Dr. Herzig, to have deviated from the standard of care applicable to physicians such as himself and therefore to have been negligent in his treatment of the plaintiff, Charles Bradford?
"Yes
"2. Do you find the defendant, Dr. Herzig's negligence to have been a proximate cause of the plaintiff's injury?
"Yes
"3. Do you find Dr. Doering's care to have been a superseding cause of the plaintiff's injury?
"No
"4. Please specify the dates upon which you find the defendant, Steven Herzig, M.D., to have been negligent, and which negligence constituted a proximate cause of the plaintiff, Charles Bradford's requirement for daily, on-going dialysis.
"7/13/87 and 10/15/87 (Proximate Cause)
"5. Please specify, by date, the time when you determine the plaintiff, Charles Bradford's, renal damage to have become so severe that it was inevitable (even if not then known) that permanent daily self-dialysis would become necessary.
"11/20/87"
[5] The jury found that the plaintiff had suffered $419,000 past and future economic and noneconomic damages from his injuries, and that Marjorie

## I

The plaintiff contends that the trial court improperly found that the defendant's failure to plead the plaintiff's contributory negligence as a special defense pursuant to General Statutes § 52-114 did not bar the jury from considering his contributory negligence in determining the amount of damages to be awarded. The trial court found that the jury properly considered the plaintiff's negligence in allocating the damages due the plaintiff under the dictate of § 52-572h.[6]

Section 52-114 provides that "[i]n any action to recover damages for negligently causing . . . personal injury . . . it shall be presumed that such person . . . who was injured . . . was, at the time of the commission of the alleged negligent act or acts, in the exercise of reasonable care. If contributory negligence is relied upon as a defense, it shall be affirmatively pleaded by the defendant . . . and the burden of proving such contributory negligence shall rest upon the defendant or defendants." Thus, there is a presumption of reasonable care on the part of the injured party that the defendant has the burden of overcoming, and the failure of a defendant in a negligence action to plead contributory negligence as an affirmative defense precludes any inquiry into negligent acts by the plaintiff. *Delott* v. *Roraback,* 179 Conn. 406, 414, 426 A.2d 791 (1980); *Sady* v. *Liberty Mutual Ins. Co.,*

---

Bradford had suffered $25,000 in past noneconomic and future economic damages from loss of consortium. The court deducted collateral source payments of $42,738.45 from the past economic damages due to the plaintiff, and then reduced the entire amount of damages due to both plaintiffs by 30 percent in accordance with the jury's finding of the named plaintiff's "contributory negligence." The court held the defendant responsible for 75 percent of the $280,883.08 total damages collectively due to the plaintiffs, or $210,662.31.

[6] See footnote 3.

29 Conn. App. 552, 556–57, 616 A.2d 819 (1992). It is undisputed that, in the present case, the defendant did not include in his answer any allegation of contributory negligence. Under the terms of § 52-114, he was thus not entitled to a jury instruction on contributory negligence or to a verdict form that included contributory negligence, both of which were provided in this case. *Mauro* v. *Yale-New Haven Hospital,* 31 Conn. App. 584, 593, 627 A.2d 443 (1993).

The defendant maintains, however, that § 52-114 does not apply to the jury's consideration of the plaintiff's negligence under § 52-572h, the comparative negligence statute. The question for resolution, then, according to the defendant, is whether § 52-572h relieves a defendant of the obligation affirmatively to plead contributory negligence. The defendant claims that there is a conflict between that section and § 52-114, noting the presence of mandatory statutory language in § 52-572h (b) and (f) requiring the jury to consider the plaintiff's negligence in computing damages. It is the defendant's contention that the comparative negligence statute, being more specific than § 52-114, was correctly deemed controlling by the trial court, which concluded that "it was not necessary to plead contributory negligence on the part of the plaintiff by the defendant as the statute required the jury to consider the plaintiff's negligence in determining the recovery without regard to any claim of contributory negligence." The defendant also contends that the plaintiff waived his right to object to the absence of any allegation of contributory negligence in the pleadings by failing to object at trial to the introduction of evidence of contributory negligence.

Although the plaintiff's alleged contributory negligence is the focus of this claim, exactly what this contributory negligence consists of remains a mystery to this court. The plaintiff stated at oral argument in this

court that there was no evidence of contributory negligence presented at trial. The defendant claims that it is clear that the evidence of contributory negligence came out at trial, and consisted of the plaintiff's failure to follow the defendant's instructions.[7] The record before this court is devoid, however, of any documentation that such evidence actually existed, much less whether the plaintiff objected to its introduction at trial. Neither party has filed any transcript relating to the introduction of evidence of contributory negligence, or relating to the plaintiff's failure to follow the defendant's instructions.

Whether pleaded or not in this case, contributory negligence is an affirmative defense, and the burden of proof was on the defendant to establish its existence. Even if § 52-572h (f) (5) eliminates the necessity of pleading contributory negligence, the burden of proving its existence and of presenting sufficient evidence for the jury to make a finding as to contributory negligence was on the defendant. See *Sady* v. *Liberty Mutual Ins. Co.,* supra.

The plaintiff, not being required to disprove contributory negligence to establish a prima facie case of negligence against the defendant, should not have to show the absence of contributory negligence on appeal. Such a rule, in effect, would require the plaintiff, who claims that no reduction in the jury's award for his contributory negligence should be made, to prove a negative. The plaintiff has raised the issue of whether the evidence supports a material finding, and is entitled to know upon what evidence the defendant relies. *Jennings* v. *Reale Construction Co.,* 175 Conn. 16, 20, 392

---

[7] An alleged failure by the plaintiff to follow his physician's instructions would usually constitute a failure to mitigate damages rather than a contributing proximate cause of the negligence that caused the plaintiff's injury. *Mauro* v. *Yale-New Haven Hospital,* 31 Conn. App. 584, 593, 627 A.2d 443 (1993).

A.2d 962 (1978); *Northwestern Electric, Inc.* v. *Roz-bicki,* 6 Conn. App. 417, 421–22, 505 A.2d 750 (1986). The burden is on the defendant to supply a record sufficient to support a finding of the plaintiff's contributory negligence, especially where the defendant alleges that the plaintiff failed to object to the introduction of such evidence at trial.

It is undisputed that the defendant did not plead contributory negligence in his answer. Without any evidence before this court to support the jury's finding of contributory negligence and the defendant's claim that the plaintiff failed to object to its admission into evidence, we can come to no other conclusion than that the jury's finding of contributory negligence was improper.[8]

Moreover, the trial court clearly stated at the beginning of its charge to the jury that the defendant had only denied the plaintiff's allegations, and had set up no new matter as a defense. It was only at the close of the charge, when the court was reviewing the verdict form with the jury, that a cursory mention of contributory negligence was made. The court later expressed a reservation that it had not mentioned contributory negligence in the charge, but nonetheless allowed the jury to decide the question of the plaintiff's contributory negligence. It is evident that the court's charge provided no guidance to the jury as to the definition of contributory negligence or its role in this case. The charge was misleading because the jury was led to believe at the outset that there were no affirmative defenses, and then was told, in essence, that there was an affirmative defense, namely contributory negligence. Its verdict on that issue must be set aside.

---

[8] Therefore, we need not answer the question posed by the defendant of whether General Statutes § 52-572h relieves a defendant of the obligation to plead contributory negligence affirmatively.

## II

The plaintiff's second claim is that the trial court, in accordance with the jury's verdict, improperly assigned 25 percent of the negligence included in the plaintiff's harm to a nonparty physician, Doering. The trial court concluded that sufficient evidence existed to uphold the jury's finding that Doering was partially responsible for the plaintiff's injuries. We hold that the negligence of a nonparty should not have been considered by the jury and reverse the decision of the trial court.

General Statutes § 52-572h (f) provides that "[t]he jury . . . shall specify . . . (4) the percentage of negligence that proximately caused the injury . . . in relation to one hundred per cent, that is attributable to *each party* whose negligent actions were a proximate cause of the injury . . . ." (Emphasis added.)[9] It is clear from the language of the statute that the jury is entitled to attribute and divide the percentage of negligence only among parties to the action. Here, the only party whose negligent actions were a proximate cause of the plaintiff's injury was Herzig, the defendant. Doering was not a party to the action, and no negligence could properly be attributed to him by the jury. There is no complaint or third party complaint against Doering and no way to determine what comprised his alleged negligence. Also, there is obviously no answer or special defense by Doering possible, because he is not a party. We conclude as a matter of law that 100 percent of the negligence (excluding the percentage attributable to the plaintiff, which we have already concluded to be zero in this case) that proximately caused the injury must be attributed to the defendant.

[9] This section is part of a statute commonly known as Tort II, which became effective on October 1, 1987. The sentence quoted in the text corresponds precisely to language that was found in the same section of the statute commonly known as Tort I, except for the use of the word "party" instead of "person." We apply the Tort II statute to this situation because

It is axiomatic that "where the negligence of two persons concurs to produce a single result, a plaintiff can elect to sue either or both." *Fox* v. *Fox,* 168 Conn. 592, 594, 362 A.2d 854 (1975); see also *Gionfriddo* v. *Gartenhaus Cafe,* 15 Conn. App. 392, 397, 546 A.2d 284 (1988), affirmed, 211 Conn. 67, 557 A.2d 540 (1989). The plaintiff had the right to choose either or both of two defendants to sue. If the defendant believed that a nonparty was responsible for some or all of the plaintiff's injuries, it was his responsibility to implead that nonparty. General Statutes §§ 52-102, 52-102a.

Although a judgment against a plaintiff in an action against one tortfeasor does not itself terminate that plaintiff's right to sue another party who may be liable for the same injury; Practice Book § 97; the plaintiff here is caught in a dilemma if § 52-572h (f) (4) is read to allow the total amount of damages found by the jury to be due the plaintiff to be reduced by 25 percent. The damages found attributable to Doering as a nonparty are not a judgment and do not bind Doering. The plaintiff cannot obtain a judgment against Doering without bringing a separate action against him. Such an action would be time barred in this case. The plaintiff would therefore be forced to sue all possible joint tortfeasors before the statute of limitations ran in either the same action or a separate action. If he chose a separate action, and the first action had terminated with the jury's determination that Doering was responsible for 25 percent of the damages, the plaintiff would be limited to a cap of 25 percent of the first jury's verdict in his action against Doering. *Gionfriddo* v. *Gartenhaus Cafe,* supra, 399–400. It is also possible that the plaintiff would be unable to collect anything from Doering because a jury in an action actually defended by Doering might not find him liable at all.

the acts of negligence allegedly attributable to Doering had to have occurred after October 1, 1987, because the plaintiff was not treated by Doering until December, 1987.

The jury's answers to the special interrogatories stated that the negligent conduct of the defendant that caused the plaintiff to require "daily, on-going dialysis" occurred on July 13, 1987, and October 15, 1987, and that by November 20, 1987, the plaintiff's renal damage was so severe that it was inevitable that "permanent daily self-dialysis" would be necessary. At that time, the plaintiff had not yet been treated by Doering. It is thus unclear how the nonparty physician's conduct could have been a proximate cause of the plaintiff's injuries that were the subject of the jury's verdict against the defendant. Section 52-572h (f) speaks of "the injury," reflecting the fact that the statute relates to one injury, and therefore to joint tortfeasors. It is doubtful on the basis of the jury's answers to the interrogatories that we are dealing with joint tortfeasors. The facts found by the jury would indicate that the two physicians caused separate and distinct injuries to the plaintiff, so that § 52-572h (f) would never apply. See *Reilly* v. *DiBianco,* 6 Conn. App. 556, 565, 507 A.2d 106, cert. denied, 200 Conn. 804, 510 A.2d 193 (1986).

We hold that the trial court's judgment improperly allocated to a nonparty a percentage of the negligence that caused the plaintiff's injuries.

### III

The only remaining issue concerns the remedy that we should grant to the plaintiff. The defendant argues that a new trial on all issues should be granted because the jury's verdict is ambiguous, and because the issues of liability and damages are inextricably interwoven. The defendant cites *Murray* v. *Krenz,* 94 Conn. 503, 508–509, 109 A. 185 (1920), in support of the proposition that the jury might have reached a "compromise verdict" in this case, and that both the issues of liability and damages must be relitigated. Id. Unlike the trial court in that case, however, the trial court here gave no indication that it believed the jury reached a

"compromise verdict." Also, in *Murray* v. *Krenz,* supra, the plaintiff sought a new trial as to damages on the ground that the verdict itself was against the evidence. Here, the plaintiff's claims address only portions of the verdict, and are unrelated to the amount of the verdict. The plaintiff's claims of contributory negligence and nonparty negligence can be remedied without setting aside the whole verdict. We therefore do not find *Murray* v. *Krenz,* supra, to be controlling.

A jury's verdict should not be set aside unless "the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles . . . ." (Internal quotation marks omitted.) *Caciopoli* v. *Acampora,* 30 Conn. App. 327, 331, 620 A.2d 191 (1993). The jury properly found the defendant liable for the plaintiff's injuries and determined the amount of damages to which the plaintiff was entitled. A new trial is not necessary, therefore, to establish either liability or damages. See *Caron* v. *Adams,* 33 Conn. App. 673, 685, 638 A.2d 1073 (1994).

The verdict form explicitly stated that, without regard to the negligence of the plaintiff, the jury found the plaintiff's damages to be $419,000 and his wife's damages to be $25,000. Those findings are valid and need not be set aside. The first impropriety in this case occurred when the jury found the plaintiff to have been 30 percent contributorily negligent, which resulted in the court's reduction of the total award due to both plaintiffs by 30 percent. The second impropriety occurred when the jury found Doering to have been 25 percent negligent, which resulted in the court's rendering of judgment of only 75 percent of the total damages against the defendant. The jury should have considered neither the plaintiff's contributory negligence nor Doering's negligence. Marjorie Bradford is entitled to the whole of her damages from the defendant, totaling $25,000. Charles Bradford is entitled to

the whole of his damages, less $42,738.45 in collateral source payments, from the defendant, totaling $376,261.55.

The judgment is reversed to the extent that it reduced the award to the plaintiffs and the case is remanded with direction to render judgment for the plaintiffs in accordance with this opinion.

In this opinion the other judges concurred.