[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO CITE-IN PARTY DEFENDANTS
These actions arise out of an alleged incident of November 7, 1988 wherein it is claimed that the plaintiff attempted to strangle herself while a patient at Cedarcrest Hospital, a state psychiatric hospital. The Cedarcrest action was commenced by CT Page 3586 service of process on February 16, 1990. The State of Connecticut action was commenced on October 25, 1990. The Cedarcrest action alleges negligence, and violation of the plaintiff's civil rights. The State of Connecticut action is essentially an action in negligence, which action was authorized by the State Claims Commission. On September 30, 1993, approximately three and a half years after the filing of the Cedarcrest action, almost five years after the date of the alleged incident, the defendants filed these identical motions in these cases. The defendants in both of the cases are represented by the Attorney General of the State of Connecticut.
The motions are captioned "Motion to Cite-In Party Defendants Pursuant to C.G.S. 52-102." The persons sought to be cited in are 1) Elmcrest Manor Psychiatric Institute, Inc.; and 2) the Marlborough Company (who allegedly operates Elmcrest Manor); 3) and the L M Ambulance Corp., Inc. who allegedly responded to the Cedarcrest emergency, for the purpose of transporting the plaintiff to Hartford Hospital.
The plaintiff vigorously opposes the motion on a number of grounds, 1) the Statute of Limitations has expired as to these parties; 2) the motion is not timely and the granting thereof will cause unreasonable delay in having a hearing of the case on its merits; 3) Tort Reform II does not apply to statutory causes of action based upon Civil Rights violations; 4) there is no General Statutes 52-190a "reasonable inquiry and certificate of good faith" as concerns the alleged negligence of the proposed third party health providers; 5) the citing in provisions of General Statutes Sec. 52-102 are inappropriate to cite in these parties.
The defendant, in making this motion to implead "Pursuant to Conn. General Statutes 52-102" asserts: "The defendants represent that the above named non-parties are necessary for a complete determination on settlement of the questions involved in this suit, in particular, so as to afford a proper basis for appointment of liability under Conn. Gen. Stat. 52-572."
The court is mindful of the fact that a number of Superior Court decisions have recognized the concept of "parties for apportionment." The rationale of those cases is that impleaded persons, though not responsible in damages because of the expiration of the statute of limitations as against them, may be brought into the case solely for the purpose of reducing the CT Page 3587 amount of the judgment which may issue in favor of the plaintiff. This court is mindful that other courts, though allowing the citing in, allow the complete removal for all purposes of persons against whom the statute of limitations has clearly expired. The rationale of the former decisions is based upon a view that the purpose of "tort reform" was that no person should be required to pay more than his share of the damages. The rationale of the latter cases is that this may have been the basis of Tort Reform I (Public Act 86-338), but that such a theory was specifically modified by Tort Reform II. (Public Act 87-227).
It is apparent that decisions which allow persons to remain in as "parties for apportionment" are influenced by the proposition that to do otherwise may allow the plaintiff to frustrate a defendant's right to a sharing of the debt by other joint tortfeasors. What is overlooked by this rationale, however, is that under Tort Reform I, comparing the defendant's negligence to that of "all persons", required that the plaintiff, the creditor, subsidize the interests of the debtors, the joint tortfeasors, by accomplishing an automatic reduction in the debt by virtue of the inability of the creditor to obtain judgment against one or more of the joint tortfeasors.
The concept of contribution between joint debtors has always been recognized in this state, under the established rules of mutual fairness enunciated by the application of the principles of equity. See Waters v. Waters, 110 Conn. 342, 345 (1930). Under traditional concepts of objective fairness, as reflected by equity, it has never been seriously asserted that contribution between joint debtors be accomplished at the expense of the creditor through mandatory debt reduction.
Tort Reform II to a large extent brought the 1986 concept of contribution or sharing amongst joint tort feasors more into line with the traditional equitable concepts of contribution by eliminating mandatory debt reduction for the activity of a joint tortfeasor against whom judgment could not be entered as a matter of law. By substituting the word "parties" for the word "persons" it eliminated the prospect of the creditor-injured party receiving less than a 100% judgment. The sole exception contained in the statute relates to a consideration of the negligence of persons against whom a claim has been asserted by the plaintiff in one fashion or another, but whose claim has been settled. The plaintiff's own comparative negligence is of course deducted from the judgment under both Tort Reform I and II. CT Page 3588
The impleader statute, General Statutes 52-102 states: ". . . . provided no person who is immune from liability shall be made a defendant in the controversy". If, as a matter of law judgment cannot be entered against a person he cannot be retained as a party in the plaintiff's suit. To allow an immune person to be retained in the suit for the sole purposes of reducing the debt through illusory "apportionment" would be precisely contrary to the clear mandate of the legislature in enactingPublic Act 87-227, Tort Reform II. If it be said that this modification tends to re-align tort reform for the benefit of injured parties so as to eliminate automatic debt reduction a review of the transcript of the 1987 legislative deliberations indicates that this is precisely what the legislature intended to do.
The very recent Appellate Court decision Bradford v. Herzig,33 Conn. App. 714 (March 15, 1994) resolves some of the judicial concerns as to legislative intent, as expressed in some Superior Court decisions. The plaintiff does have an absolute right to choose who he is to sue. This is no different than a commercial institution having an absolute right to choose which of the co-makers of a note it determines to sue. The presence of immune persons in the suit is not "necessary for a complete determination or settlement of any question involved therein", despite a proffered contrary interpretation of General Statutes52-102(2). There is to be no reduction in damages for the purported negligence of a person against whom judgment cannot be entered in the subject action. The plaintiff is not required, at his peril of debt reduction, to sue all possible tortfeasors before the statute of limitation ran. The Appellate Court does not in any fashion criticize the plaintiff for not suing other potentially liable persons. Nor does the court penalize the plaintiff because the Statute of Limitations has expired against outside persons.
This court is in agreement with the decision of Judge Berger in the case of Belanger v. Maynard, Superior Court Docket # CV 91-0445978L, June 25, 1992 and with the decision of Judge Hurley in the case of Littlejohn v. Johnson, Superior Court Docket # 517124, October 1, 1993. Where it has been determined that the Statute of Limitations is a bar to the action, the impleaded party is eliminated from the action for all purposes. The impleaded party cannot remain in the case "for the purposes of appointment." CT Page 3589
The court acknowledges that the expiration of the Statute of Limitations is a question of fact and must be asserted as a special Defense to invoke its protection. Practice Book Sec. 165.
The same procedural posture applies to all areas of immunity from liability, including lack of personal jurisdiction, lack of subject matter jurisdiction, governmental immunity, sovereign immunity, etc. See Dolnack v. Metro North Commuter Railroad Co.,33 Conn. App. 832, 835 (March 29, 1994). Service of Process makes a person a party. Whether a party is immune from liability and must thereafter be removed from the case as a defendant requires a later determination by a court. Much of the confusion which has given rise to conflicting decisions arises out of interpreting the verbiage of General Statutes 52-102(a) "made a defendant" as being synonymous with the different concept of being made a party in the first instance by service of process. This gives rise to an interpretation that as long as process can be served upon a person in the first instance the legislature must have intended that the person remain in the action for some purpose; and hence, there being no other reason to allow service of process, it must be for apportionment.
That interpretation ignores the reality that the courts do not predetermine who can be served with process, with the rare exception of pre-judgment deprivations. There is no pre-service adversary procedure to determine who will eventually be determined to be immune from liability. Anyone can be served with process. Persons immune from liability, as thereafter determined by a court, are removed to the same extent as would be persons who were originally served but thereafter removed through that person's adversary motion to dismiss, motion to strike or motion for summary judgment. In either circumstance the legal consequence is as if they were never served. They are not a party "against whom recovery is allowed" (General Statutes52-572h(c). Further, the plaintiff cannot be expected, at his peril, to be the champion of the rights of theoretical "defendants". At trial a plaintiff cannot obtain recovery against a person whom the law determines, during any stage of the proceedings, is immune from liability. They have no role in the apportionment of damages between the plaintiff and the defendant(s). To hold otherwise would totally obliterate the obvious distinction between Tort Reform I and Tort Reform II.
Although it appears from the motion presented to the court CT Page 3590 that the Statute of Limitation has expired as to each of these outside persons, yet the court is not empowered to make a factual determination solely on the basis of the allegations set forth in the motion. It is always remotely possible that estoppel can be pleaded so as to defeat the application of the Statute of Limitations in any hypothetical case. The defendant also claims in the motion that a contract exists between the plaintiff and some of the outside persons so as to bring the matter within the six year Statute of Limitation under a theory that negligence caused a breach of contract, even though this theory appears highly improbable. (see Barnes v. Schlein, 192 Conn. 732 (1984). Also Bria v. St. Joseph Hospital, 153 Conn. 626 (1966).
General Statutes 52-190a requires that a certificate be filed concerning good faith. Otherwise "No civil Action shall be filed . . ." This joinder motion is in fact tantamount to the filing of a civil action against the outside persons. Without the prior filing of a C.G.S. 52-190a certificate this motion cannot be granted. The certification is a condition precedent to the serving of process. Hence the motion to cite in is denied.
The court having carefully considered the arguments advanced by the parties determines that General Statutes 52-102 is an appropriate statutory provision for the impleading of persons into an action under Tort Reform II. (see Bradford v. Herzig,33 Conn. App. 714, 724 (March 1994)). The court does not determine whether the provisions of the General Statutes 52-572h applies to Civil Rights Claims. If the defendant chooses to implead the outside persons, those matters may be thereafter addressed by motions directed to those counts. The late filing of these motions will properly be addressed by an anticipated pleading of the Statute of Limitations if impleader does take place.
The court notes that the Appellate Court has indicated, in its recent decision Bradford v. Herzig, supra, P 724, that the serving of a third party complaint under either General Statutes52-102a or General Statutes 52-102a may be appropriate to assert claims against outside persons.
The Court assumes that the Appellate Court refers to actions for indemnity under General Statutes 52-572h(j) in referring to the use of General Statutes 52-102a as a proper method for impleading through third party complaints. Even under those circumstances however impleader would not avoid the application of the Statute of Limitations. See Protter v. Brown Thompson CT Page 3591 Co., 25 Conn. App. 359 (1991); certification granted 220 Conn. 910, but undetermined as the appeal was withdrawn.
Unless the Appellate Court determines at some later date, to reverse its decision in Protter v. Brown Thompson Co., supra, and to allow post-judgment actions for both contribution and indemnity, as actions in equity free of the underlying Statute of Limitations, (See earlier Supreme Court cases Walters v. Walters, supra; McEvoy v. Waterbury, 92 Conn. 664, 667 (1918); or unless the legislature determines to toll the Statute of Limitations in these cases, as a start, this court cannot undertake to fashion a remedy to allow for either partial or full and complete contribution amongst joint tortfeasors.
For the reason set forth herein, the absence of a certification required by General Statutes 52-190a, the motion to implead is denied. In overruling the plaintiff's position that the court should, pre-entry, determine the expiration of the Statute of Limitations this court does not adopt the inferential contention of defendant that the outside persons can be brought into the case and remain in the action solely as "a proper basis for appointment of liability".
L. Paul Sullivan, J.