[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
This case arises out of a motor vehicle accident in which an infant, Adam Wozniak, was injured after being struck by a motor vehicle driven by Joseph Claffey, who was insured by the plaintiff Allstate Insurance Company ("Allstate") under an automobile insurance policy and an umbrella insurance policy. After making payment to Adam Wozniak's family, the plaintiff secured an assignment of Joseph Claffey's rights against the defendants, Dr. Andre Lerer and Neurologic Associates, P.C. Allstate then filed this action against the defendants. The defendants have moved for summary judgment on the grounds that Allstate has no legal basis for the present suit. For the reasons set forth below, the court grants the Motion for Summary Judgment.
Factual and Procedural Background
By Complaint dated September 19, 1995 (the "Complaint"), Allstate alleged that it insured Joseph Claffey under an automobile policy which tied in with an excess policy, that on June 29, 1993, Claffey was admitted to New Britain General Hospital in a disoriented state following an automobile accident and became a patient of the defendant, Andre CT Page 1004 Lerer, M.D. Complaint ¶¶ 2-4. The Complaint further alleged that:
 At all times herein mentioned, the defendant Lerer was required in the treatment of patients to exercise and use that degree of skill, leaning, and care ordinarily used and prevailing under the same or similar circumstances by members of his profession. Complaint ¶ 5.
The Complaint further alleged that Lerer's negligent care of Claffey caused Claffey to injure Adam Wozniak. On December 7, 1993 Adam Wozniak, through his mother, Zophia Wozniak brought suit against Claffey, and thereafter Allstate paid $1,100,000 to the Wozniaks in settlement of that action "the sum equal to the available amount of coverage under the plaintiff's insurance policy to Claffey," Complaint ¶¶ 14, 16, and 20. Paragraph 21 of the Complaint alleges:
 Pursuant to the Allstate automobile insurance policy with policy number issued to Claffey and an assignment from Claffey, the plaintiff is the assignee and equitable and bona fide owner of Claffey's action for all monies disbursed to Zofia Wozniak on behalf of Adam Wozniak.
Allstate made the $1,100,000 settlement payment in response to an Offer of Judgment in that amount which was filed on behalf of the plaintiff, Adam Wozniak, in the case against Claffey. Neither Claffey, nor Allstate had ever moved to make Dr. Lerer or Neurological Associates P.C. a party to that action. However, prior to making the settlement payment Allstate sent Dr. Lerer a letter which advised that Dr. Lerer might have violated the applicable standard of care with respect to his medical treatment of Claffey and that that violation might have caused "the incident." The letter further stated:
 [Y]ou are hereby further put on notice that if you believe that the figure to resolve this case, at this time, is not reasonable, you should immediately provide us with reasonable reasons as to why not.
The automobile insurance policy covering Claffey provided that coverage did not apply to liability for "bodily injury or property damage caused intentionally by . . . an insured person." Automobile Policy at p. 6. The Umbrella Policy provided:
Exclusions — Losses We Do Not Cover CT Page 1005
This policy will not apply:
8. to bodily injury or property damage resulting from: a) an act or omission intended or expected to cause bodily injury or property damage. This exclusion applies even if the bodily injury or property damage is of a different kind or degree, or is sustained by a different person or property than that intended or expected, or b) an act or omission committed by an insured while insane, or while lacking the mental capacity or control of his or her conduct, or while unable to form any intent to cause bodily injury or property damage. This applies only if a reasonable person would expect some bodily injury or property damage to result from the act or omission.
9. to bodily injury or property damage resulting from: a) a criminal act or omission, or b) an act or omission which is criminal in nature and committed by an insured who lacked the mental capacity to appreciate the criminal nature or wrongfulness of the act or omission, or to conform his or her conduct to the requirements of the law, or to form the necessary intent under the law.
This exclusion applies regardless of whether the insured is actually charged with or convicted or a crime. Umbrella Policy at p. 6.
The Police Report concerning the incident involving Claffey's driving his vehicle into the Wozniak family indicates the following: While in custody following the accident Claffey admitted to police officers that he was looking for an individual to intentionally injure. Claffey stated that "the people on Kenyon Circle were the wrong ones, I drove past them and turned around and deliberately ran them over." During the Criminal trial against Claffey Judge Corrigan found that Claffey "intended to drive his automobile into the respective people, Mrs. Wozniak and her three children." Judge Corrigan also found that "the defendant, at the time he committed the offenses indicated, lacked substantial capacity as a result of the mental disease or defect to appreciate the wrongfulness of his conduct in order to control his conduct within the requirements of the law." The court found Claffey not guilty by reason of mental disease or defect and ordered Claffey committed to the custody of the Commissioner of Mental Health. Transcript of trial from State ofConnecticut v. Joseph Claffey, CR-93-0142598, CR-93-0142499, Superior CT Page 1006 Court, Judicial District of Hartford/New Britain at Hartford, October 19, 1994, pp. 39, 40.
Discussion of Law and Ruling
Practice Book § 17-49 (formerly § 384) provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Connecticut Bank Trust Co. v. Carriage Lane Associates,219 Conn. 772, 780-81, 595 A.2d 334 (1991); Lees v. Middlesex Ins. Co.,219 Conn. 644, 650, 594 A.2d 952 (1991). Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact; D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434,429 A.2d 908 (1980); a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with the evidence disclosing the existence of such an issue. Practice Book §§ 17-45, 17-46; Burns v. Hartford Hospital,192 Conn. 451, 455, 472 A.2d 1257 (1984). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. Town Bank Trust Co. v. Benson,176 Conn. 304, 309, 407 A.2d 971 (1978); Strada v. ConnecticutNewspapers, Inc., 193 Conn. 313, 317, 477 A.2d 1005 (1984). The test is whether a party would be entitled to a directed verdict on the same facts. Batick v. Seymour, 186 Conn. 632, 647, 443 A.2d 471 (1982); NewMilford Savings Bank v. Roina, 38 Conn. App. 240, 243-44, 659 A.2d 1226
(1995).
Summary judgment should only be granted if the pleadings, affidavits and other proof submitted demonstrate that there is no genuine issue as to any material fact. Scinto v. Stain, 224 Conn. 524, 530, cert. denied,114 S.Ct. 176, 126 L.Ed.2d 136 (1993); Connell v. Colwell, 214 Conn. 242,246, 571 A.2d 116 (1991). Summary judgment is "designed to eliminate the delay and expense of litigating an issue where there is no real issue to be tried." Wilson v. City of New Haven, 213 Conn. 277, 279, 567 A.2d 829
(1989).
Contribution Among Joint Tortfeasors
Joint tortfeasors are "two or more persons who are liable to the same person for the same harm. It is not necessary that they act in concert or in pursuance of a common design, nor is it necessary that they be joined as defendants." Gionfriddo v. Gartenhaus Cafe, 15 Conn. App. 392,546 A.2d 284 (1988), aff'd, 211 Conn. 67, 557 A.2d 540 (1989); Restatement (Second), Torts, § 886A. At common law there was no contribution among joint tortfeasors. Donner v. Kearse, 234 Conn. 660, CT Page 1007 666, 662 A.2d 1269 (1995). Connecticut General Statutes § 52-572h
alters the common law rule and provides in relevant part: "[I]f the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for his proportionate share of the recoverable economic damages and the recoverable noneconomic damages. . . ." The statutory framework for apportionment allows a right to contribution only in post-judgment proceedings pursuant to §52-572h(h). Section 52-572h(g).
Connecticut General Statutes § 52-102b allows a defendant in a negligence action to join parties who may be liable to the plaintiff. It provides in pertinent part:
 (a) A defendant in any civil action to which section 52-572h applies may serve a writ, summons and complaint upon a person not a party to the action who is or may be liable pursuant to said section for a proportionate share of the plaintiff's damages in which case the demand for relief shall seek an apportionment of liability. Any such writ, summons and complaint, hereinafter called the apportionment complaint, shall be served within one hundred twenty days of the return date specified in the plaintiff's original complaint.
Joinder of parties for apportionment purposes pursuant to § 52-102b
is "the exclusive means by which a defendant may add a person who is or may be liable pursuant to section 52-572h." Connecticut General Statutes § 52-102b(f). If a defendant believes that a nonparty is responsible for some or all of the plaintiff's injuries, it is his responsibility to implead that nonparty. Bradford v. Herzig, 33 Conn. App. 714, 724,638 A.2d 608, cert. denied, 229 Conn. 920, 642 A.2d 1212 (1994); Donnerv. Kearse, 234 Conn. 660, 669, 662 A.2d 1269 (1995).
It is Allstate's position that the defendants in this case are liable for some or all of the damages sustained by Adam Wozniak. Allstate claims that this subrogation action has been brought in part pursuant to a provision of Claffey's Automobile Policy which provided that "if we ask, the insured person must also help us to obtain payment from anyone who may be jointly responsible." See Plaintiff's Objection to Summary Judgment at p. 18. In addition, in attempting to refute the defendants' argument that this action is a personal injury action, Allstate has admitted that its action on behalf of Claffey in this case is for a portion of the economic damage sustained by Adam Wozniak. See Plaintiff's Objection to Summary Judgment at p. 13. CT Page 1008
Allstate's implies that it was not required to comply with § 52-572h
or § 52-102b because it wrote to the defendants before it settled with the Wozniaks. However, there is no authority that advising a joint tortfeasor of an intended settlement payment either gives a tortfeasor any rights to seek contribution from the joint tortfeasor, or dispenses with statutory requirements for seeking apportionment of damages with the joint tortfeasor
An insurer can take nothing by subrogation but the rights of its insured, and is subrogated to only such rights as the insured possesses.Orselet v. DeMatteo, 206 Conn. 542, 546-47, 539 A.2d 95 (1988). Allstate can have no rights against the defendants greater than Claffey had and Claffey could not sue the defendants, but was, instead, limited to joining the defendants in the suit by the Wozniaks pursuant to §52-102b.
Courts in other jurisdictions have held that the common law prohibition against contribution among joint tortfeasors bars a subrogation action by an insurer against one who is a joint tortfeasor with its insured.Florida Patient's Compensation Fund v. St. Paul Fire and Marine InsuranceCompany, 559 So.2d 195 (Supreme Court of Florida, 1990); Royal IndemnityCo. v. Becker, 173 N.E. 194 (Ohio 1930); Employers Mutual Liability Ins.Co. of Wisconsin v. Advance Transformer Co., 15 Ariz. App. 1 (1971);Winn-Dixie Stores, Inc v. Fellows, 153 So.2d 45 (Fla.Ct.App. 1963).
In Employers Mutual Liability, a wrongful death action was brought against two defendants. After settlement of the wrongful death action by one defendant, the insurer of the settled defendant was substituted as third party plaintiff against the second defendant. The Appellate Court affirmed the trial court's grant of summary judgment in favor of the second defendant on the basis that no right of contribution exists between joint tortfeasors.
In a medical malpractice action against two doctors, after the insurer for one of the doctors settled, it brought a subrogation action against the second doctor. Like Connecticut, Florida does not allow contribution among joint tortfeasors, except under the terms of Section 768.31(4)(d), Florida Statutes (1985). The insurer failed to comply with the terms of that statute. The Supreme Court of Florida upheld the trial court's dismissal of the subrogation action, stating that "to permit the insurer to bring an action for subrogation in these circumstances would effectively eliminate the need for a contribution statute."559 So.2d at 198.
Relying on Skuzinski v. Bouchard Fuels, Inc., 240 Conn. 694, 694 A.2d 788
CT Page 1009 (1997), the plaintiff has argued that this is not an action for contribution, but rather a claim for reimbursement in full from the party who is responsible in the primary sense for the damage sustained by Joseph Claffey. This argument is untenable for two reasons. First, Allstate has not paid damages sustained by Claffey. It has paid for damages sustained by Adam Wozniak Second, Allstate has not asserted a claim of active-passive negligence of the type recognized in Skuzinski. In that case the Court stated:
 Ordinarily there is no right of indemnity or contribution between joint tort-feasors. . . . Where, however, one of the defendants is in control of the situation and his negligence alone is the direct immediate cause of the injury and the other defendant does not know of the fault, has no reason to anticipate it and may reasonably rely upon the former not to commit a wrong, it is only justice that the former should bear the burden of damages due to the injury. . . . Under the circumstances described, we have distinguished between `active or primary negligence,' and `passive or secondary negligence.' . . . Indemnity shifts the impact of liability from passive joint tortfeasors to active ones." (Citations omitted; internal quotation marks omitted.) Kyrtatas v. Stop Shop, Inc., 205 Conn. 694, 697-98, 535 A.2d 357
(1988); Burkert v. Petrol Plus of Naugatuck, Inc., 216 Conn. 65, 74, 579 A.2d 26 (1990); Kaplan v. Merberg Wrecking Corp., 152 Conn. 405, 412-16, 207 A.2d 732 (1965).
240 Conn. at 697.
The Court in Kyrtatas v. Stop Shop, Inc., supra, at 700, explained that the indemnification "doctrine arose in response to the common law prohibition against contribution, and applies only in situations in which a passive joint tortfeasor has no actual responsibility for a tort." Emphasis added. Claffey was clearly not a passive joint tortfeasor to which the passive-active indemnification rule applies. But regardless of whether Claffey's conduct is characterized as active or passive, no tortfeasor should be permitted to circumvent the apportionment and joinder provisions of §§ 52-572h and 52-102b, merely by claiming that his actions were passive. If he could, defendants could routinely ignore those statutes. This would result in a multiplicity of lawsuits in which defendants with substantial assets, but relatively small fault would lose the rights they gained under tort reform to have damages assessed against them based on their fault, not on their net worth. See Donner v. Kearse, CT Page 1010234 Conn. 660, 666-670, 662 A.2d 1269 (1995).
In the cases where the claim of indemnification versus contribution has been raised it has been raised in the context of an action in which parties have been joined pursuant to 52-102b, and not in a separate action by one tortfeasor against another. Crotta v. Home Depot, Inc.,249 Conn. 634, 732 A.2d 767 (1999); Skuzinski v. Bouchard Fuels, Inc.,240 Conn. 694, 694 A.2d 788 (1997); Bradford v. Herzig, 33 Conn. App. 714,724, 638 A.2d 608, cert. denied, 229 Conn. 920, 642 A.2d 1212 (1994);Burkert v. Petrol Plus of Naugatuck, Inc., 216 Conn. 65, 579 A.2d 26
(1990).
Contractual Subrogation
Allstate has brought this claim "pursuant to the Allstate Automobile policy with policy number issued to Claffey . . . for all monies disbursed to Zofia Wozniak on behalf of Adam Wozniak." Complaint ¶ 21. However that policy contains no provision which permits Allstate to bring a subrogation action under the circumstances involved in this case.
Part I of the policy entitled "Automobile Liability Insurance" provides that: "Allstate will pay for all damages an insured person is legally obligated to pay because of bodily injury or property damages . . ." However, Part I contains no subrogation provision. Other parts of the Insurance Policy contain subrogation provisions, but those provision do not apply to payments made by Allstate to third parties such as Adam Wozniak.
Equitable Subrogation
Even though the policy between Claffey and Allstate does not provide for subrogation of the claim against the defendants, Allstate might still have a right to equitable subrogation if its actions fit within the requirements of equitable subrogation set forth in Westchester Fire Ins.Co. v. Allstate Ins. Co., 236 Conn. 362, 672 A.2d 939 (1996). InWestchester the Court held that an uninsured motorist carrier who paid its insured pursuant to the insurance policy for damages sustained as a result of the negligence of an uninsured tortfeasor could be subrogated to the rights of its insured against the tortfeasor without violating the long standing rule against assignment of personal injury actions. The Court held that there was a distinction between assignment of a personal injury action "which has long been against public policy," and equitable subrogation. It relied in part on the reasoning of the Oklahoma Supreme Court which had previously recognized such distinction:
[The] Oklahoma Supreme Court, in Aetna Casualty CT Page 1011 Surety Co. v. Associates Transports, Inc., 512 P.2d 137, 141 (Okla. 1973), overruled Hardware Dealers, because it recognized that there was a cognizable difference between assignment and subrogation. The "plaintiff's subrogation rights came into existence pursuant to the contract of insurance which existed prior to the time the assured's cause of action arose, rather than pursuant to an assignment made after the cause of action arose." Id., 140. "Under the common law the assignment of right of action in certain classes of tort was condemned. Champerty was penalized under a public policy which sought to restrain the traffic of merchandising in quarrels, of huckstering in litigious discord. [T]he reasons in which the ancient doctrine was rooted have not been considered applicable to indemnity insurance. Distinction between the two kinds of cases is obvious. In one there is an assignment, after loss, to a third party, a volunteer, who was under no obligation to the assignor. In the case of the prior insurer, on the other hand, there had been an assumption of liability which would mature into [a] right of action against the insurer whenever loss should occur.
236 Conn. at 369-370.
Allstate's subrogation claim in this case is distinguishable from that allowed under Westchester for a number of reasons. First, in Westchester
the insurer was standing in the shoes of its insured asserting the insured's claim against the uninsured tortfeasor. In this case Allstate has made payment to Zophia and Adam Wozniak and is really attempting to stand in their shoes and recover for injuries they sustained as a result of the defendants' alleged negligence. However, the Wozniaks are standing in their own shoes. They have brought an action against the defendants,Adam Wozniak v. New Britain General Hospital, et al, No. X03 CV95 0502560S, presently pending in this court before the undersigned.
The next distinction is that Allstate has paid the amounts it now seeks to recover as a volunteer. The prohibition against equitable subrogation by an insurer who is a volunteer has been widely recognized. See Couch on Insurance § 61:52. "[T]he payment must have been made under compulsion, or for the protection of interest of the person making it in discharge of an existing liability which must be fully satisfied. Hence, an insurer which pays a loss for which it is not liable thereby becomes a mere volunteer, and is not entitled to subrogation . . ." Id. The insurance company will be regarded as a volunteer when it pays a claim CT Page 1012 not covered under the terms of the policy. Commercial Union InsuranceCo. v. Postin, 610 P.2d 984 (Wyo. 1980). "Where the harm for which the insurer has indemnified the insured is not covered by the policy, the making of such payment. . . is deemed `voluntary,' and no right of subrogation arises . . ." Couch on Insurance § 61:54. It is a universally recognized rule that money voluntarily paid cannot be recovered back because there was no liability to pay in the first instance. Where payment is made under an insurance policy for harm that was not covered by the policy, the necessary element of compulsion is absent and the payment was made voluntarily. See Commercial Union Ins.Co. v. Postin, supra; Hartford Fire Insurance Co. v. Payne, 28 Ga. App. 655
(1922); Nationwide Mutual Insurance Co. v. Weeks-Allen Motor Co., Inc,18 N.C. App. 689 (1973); Greenville Shipbuilding Corp. v. HartfordAccident Indemnity Co., 334 F. Sup. 1228 (N.D.Miss. 1971) aff'd,460 F.2d 1063 (5th Cir. 1972).
In this case it is undisputed that the acts of Claffey for which Allstate paid under the policy were intentional or criminal. The policies at issue explicitly exclude coverage for intentional acts or criminal acts or acts criminal in nature by an insured who lacked the mental capacity to appreciate the criminal nature of those acts.
"It is axiomatic, in the tort lexicon, that intentional conduct and negligent conduct, although differing only by a matter of degree,Mingachos v. CBS, Inc., 196 Conn. 91, 491 A.2d 368 (1985), are separate and mutually exclusive. `The distinction between intentional and unintentional invasions draws a bright line of separation among shadings of almost infinitely varied human experiences.' W. Prosser W. Keaton, Torts (5th Ed. 1984) p. 33. . . . [T]he difference in meaning is clear. `As Holmes observed, even a dog knows the difference between being tripped over and being kicked.' Id." American National Fire Ins. Co. v.Schuss, 221 Conn. 768, 776, 607 A.2d 418 (1992).
It is not disputed that at Claffey's criminal trial the court found that Claffey "intended to drive his automobile into the respective people, Mrs. Wozniak and her three children." Transcript of trial fromState of Connecticut v. Joseph Claffey, CR-93-0142598, CR-93-0142499, Superior Court, Judicial District of Hartford/New Britain at Hartford, October 19, 1994, p. 38. The court found that Claffey "did intend to cause death, which under the circumstances as he believed them to be was a substantial step in a course of conduct planned to culminate in the causing of their deaths, as he admitted to Officer Joseph Rizzo." Id. at p. 39.
There is abundant evidence that the conduct in this case was not accidental, but was intentional and that the acts of Claffey were CT Page 1013 criminal acts or acts of a criminal nature where the insured lacked the mental capacity to appreciate the criminal nature or wrongfulness of the acts. The foregoing type of conduct was not covered by the insurance policies between Claffey and Allstate.
Allstate relies on Home Insurance Co. v. Aetna Life Casualty,35 Conn. App. 94, 104, 644 A.2d 933 (1994) in which the Court stated that "the rule that mentally infirm persons face civil liability for intentional torts does not preclude a holding that the actions of such persons are regarded as unintentional for the purposes of an intentional action exclusion clause of an insurance policy." Allstate argues that under Home Insurance Claffey's conduct might have been covered under the policy and, therefore, its payment under the policy was not voluntary. However where there is a question as to whether conduct is covered under an insurance policy, an insurer who wishes to pursue a subrogation claim must wait for a court to adjudicate coverage. If it makes a payment under the policy before such adjudication, it is deemed to have done so as a volunteer, and will not be subrogated for the amounts so paid. Couch on Insurance, § 61:54, p. 270 ("The principle that the insurer is not subrogated when it makes a voluntary payment has been applied even though the `voluntary' status of the payment could not be determined until the jury's verdict established that the insurer had not been obligated to make such payment.").
In Nationwide Mutual Insurance Co. v. Weeks-Allen Motor Co.,18 N.C. App. 689, 198 S.E.2d 88 (1973), where the insured was involved in a collision allegedly caused by a defective master brake cylinder, the insurer, who settled the claim without an adjudication of liability, did so voluntarily and did not succeed to the rights of its insured against the manufacturer, distributor and seller of the distributor. InNationwide Mutual the plaintiff admitted that it settled with all the claimants without an adjudication of liability because it was able to settle all claims within the limits of its policy. The Court held that absent an adjudication of its liability, the plaintiff's payments under the policy were made as a volunteer.
The legal posture of the insurer in Westchester is different from that of Allstate here because the insurer in Westchester was clearly not a volunteer. There was no dispute in Westchester that the insurer was obligated to pay its insured for losses the insured sustained as a result of the undisputed primary negligence of the uninsured tortfeasor. Therefore, the insurer did not make payment as a volunteer. In this case there is a significant dispute as to whether the Allstate was obligated to make payment to third parties for their injuries. Therefore, for the purpose of determining its entitlement to make a claim for equitable subrogation, Allstate made payments under the policies here as a CT Page 1014 volunteer.
A third distinction between the present case and Westchester is that in this case there is a significant question as to where the primary fault lies for the injuries sustained in the incident. Equitable subrogation is founded in part upon the need to prevent injustice by allowing an insurer who has paid for injuries suffered by its insured to recover that payment from the person who caused those injuries. The Court in Westchester
stated:
 Upon such payment, the insurer became subrogated to any rights that its insured might have had against the party who had caused the loss. The tortfeasor, who was the party primarily liable for the losses sustained by the insured, benefited by the insurer's payment of a debt truly owed by the tortfeasor. We see no logical reason to permit a tortfeasor to be unjustly enriched by virtue of having its debt paid by the insurance company of a party who had the foresight to obtain insurance coverage, and thus to escape all liability for its wrongdoing, simply because the insurance company was not permitted to participate in a suit against the tortfeasor in order to recover the money that it had paid to its insured but which was properly payable by the tortfeasor.
236 Conn. At 372-373.
Have the defendants in this case enjoyed the "insurer's payment of a debt [that they] truly owed?" Based on the finding of the criminal court as to Claffey's intentional conduct, it appears more accurate to say that Allstate has paid for a debt that Claffey clearly owed. Allstate's position in this suit is that the defendants' negligence is the primary cause of Claffey's intentional conduct. For the purposes of deciding whether Allstate has the same rights to equitable subrogation as those recognized in Westchester, it is not necessary to determine where the ultimate fault lies. The crucial distinction between the present case andWestchester is that in Westchester there was no dispute as to the party responsible for the injuries involved. Here there is a significant dispute. Therefore, there is certainly no undisputed unjust enrichment of the defendants here as there was in Westchester.
The Westchester court also talked about the tortfeasor's escaping liability "simply because the insurance company was not permitted to participate in a suit against the tortfeasor." But in this case the insurance company could easily have participated in a suit against the CT Page 1015 defendants by acting through their insured to join the defendants as parties pursuant to § 52-102b in the suit brought by Adam Wozniak against Claffey.
Assignment of Medical Malpractice Action Against Public Policy
An additional basis for granting the defendants' Motion for Summary Judgment here is that the assignment by Claffey to Allstate violated the longstanding public policy against assigning personal injury actions.Dodd v. Middlesex Mutual Assurance Company, 242 Conn. 375, 698 A.2d 859
(1997).
The "Assignment of Claim" under which Allstate proceeds provides:
 I, Joseph Claffey, was an insured on an Allstate Insurance Company Policy No. 019166353 on September 25, 1993. I was involved in an automobile collision where several individuals were injured including Adam Wozniak. I was sued by the family of Adam Wozniak and Allstate Insurance Company defended and paid said claim pursuant to the contract of insurance. In recognition of these monies paid on my behalf, I assign, subrogate and transfer unto Allstate Insurance Company, its successors and assigns, a claim I have or may have against Andre Leher[sic], M.D. as a result of his medical treatment of me for any and all sums paid on my behalf in resolution of the Wozniak claim.
 IN WITNESS WHEREOF, the undersigned has caused his instrument to be executed this 19 day of September, 1995
 /s/ Joseph E. Claffey
In Dodd the court stated:
Under common law a cause of action for personal injuries cannot be assigned, and in the absence of a statutory provision to the contrary a right of action for personal injuries resulting from negligence is not assignable before judgment. 6 Am.Jur.2d 220, Assignments, § 37. The rule is succinctly stated in the Restatement, 2 Contracts § 547(1)(d): "An assignment of a claim against a third person or a bargain to assign such a claim is illegal and ineffective if the claim is for . . . (d) damages for an injury the gist of which is to the person rather than to property, unless the claim has been reduced to judgment.' The annotation, `Assignability of claim for personal injury or death,' 40 A.L.R.2d 500, 502 § 3, has noted: `It seems that few CT Page 1016 legal principles are as well settled, and as universally agreed upon, as the rule that the common law does not permit assignments of causes of action to recover for personal injuries.' See cases therein cited. The rule was early recognized in Connecticut. See Whitaker v. Gavit, 18 Conn. 522, 526 [1847]. The reasons underlying the rule have been variously stated: unscrupulous interlopers and litigious persons were to be discouraged from purchasing claims for pain and suffering and prosecuting them in court as assignees; actions for injuries that in the absence of statute did not survive the death of the victim were deemed too personal in nature to be assignable; a tort-feasor was not to be held liable to a party unharmed by him; and excessive litigation was thought to be reduced. Robins Dry Dock Repair Co. v. Flint, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 [1927]; Rice v. Stone, 83 Mass. [1 Allen] 566 [1861]; note, 40 A.L.R.2d 500. Berlinski v. Ovellette, 164 Conn. 482, 485-86, 325 A.2d 239 (1973), overruled on other grounds, Westchester Fire Ins. Co. v. Allstate Ins. Co., 236 Conn. 362, 375, 672 A.2d 939 (1996).
242 Conn. 382-383.
As set forth above, the reality of Allstate's position here is that it is attempting to recover damages it paid to a third party, Adam Wozniak, from alleged joint tortfeasors, the defendants. However, Allstate itself has chosen to characterize this case as one in which it seeks to recover damages suffered by Claffey. Allstate does not deny that this is a medical malpractice action. Clearly it cannot. It filed a good faith certificate required under § 52-190a when it filed the Complaint. However, Allstate does argue that this is not a personal injury action, but rather an action to recovery for the monetary loss suffered by Claffey. But the Complaint here clearly alleges personal injury to Claffey. That such personal injury did not result in physical, but only psychological injury to Claffey, does not make this case, as plead, any less of an action for personal injury.
A claim for medical malpractice is a claim to recover damages resulting from personal injury as the result of the alleged negligence of a health care provider. See, e.g. Connecticut General Statutes § 52-190a. This case is a personal injury action and, therefore, is controlled by the rule against assignment of personal injury actions.
A number of other jurisdictions also adhere to the rule against assignment of personal injury actions. See e.g. White v. Auto ClubInter-Insurance, 984 S.W.2d 156 (Mo.Ct.App. 1998); Shelby MutualInsurance Co. v. Birch, 196 So.2d 482 (Fla.Ct.App. 1967) aff'd,202 So.2d 561 (Fla. 1967); Gilmore v. Attebery, 899 S.W.2d 164
(Mo.Ct.App. 1995); Government Employees Insurance Co. v. Hardman,212 Ga. App. 367
CT Page 1017 (1994); Liberty Mutual Insurance Co. v. Clark, 299 S.E.2d 76
(Ga.Ct.App. 1983).
No case law in any jurisdiction supports the plaintiff's position that an assignment of a medical malpractice action is valid. In PatientsCompensation Fund v. St. Paul Fire and Marine Insurance Co., 559 So.2d 1995
(Fla. 1990), the Court held that a medical malpractice claim was not assignable or subject to subrogation. A pathologist and a surgeon were sued in malpractice by a patient. The pathologist's insurer settled with the plaintiffs and thereafter initiated an action against the surgeon. The trial court dismissed the claim because the pathologist's insurer had not complied with Florida's statutes governing contribution among joint tortfeasors. The Florida Supreme Court affirmed, and found that the non-assignable nature of personal injury and medical malpractice claims provided an additional basis for the dismissal of the action.
In conclusion, Allstate cannot maintain this action because this action is really an attempt to seek contribution from joint tortfeasors without complying with the laws governing joinder of parties and apportionment. In addition, there is no right of subrogation stated in the policies under which Allstate made payment and no right of equitable subrogation. Finally Allstate has brought this suit pursuant to the assignment of a personal injury action which is prohibited under the law of this state. For the foregoing reasons, the Motion for Summary Judgment is granted.
By the court
Aurigemma, J.